IN THE C. SUIT COURT FOR FREDERICK COL. .TY, MARYLAND

JOELLYN L. ANDREWS          :

5636 Jefferson Pike           :

Frederick, Md. 21703         :

        Plaintiff            :

                               :

      Vs.                :         Case No.  10-C-09-003041

                               :

SELECT PORTFOLIO SERVICING, INC.  :      **RDB ● 9 CV 2437**

3815 South West Temple         :

 Salt Lake City, UT 84115      :

```
Case: 09-3041-
CV CLERK FEE A
CV CLERK FEE-        80.00
MLSC                 25.00
TOTAL               105.00
Rcw# FR01    Rcpt # 52666
```

        Defendant         :

## COMPLAINT FOR DAMAGES AND FOR INJUNCTION AGAINST FORECLOSURE SALE AND OTHER RELIEF

1.     COMES NOW the Plaintiff, Joellyn Andrews herein after "Plaintiff", "Affiant", "Borrower" and files this COMPLAINT FOR DAMAGES AND FOR INJUNCTION AGAINST FORECLOSURE SALE, AND OTHER RELIEF, against Defendant, SELECT PORTFOLIO SERVICING INC, to Wit:

2.     NOTICE TO THE COURT: Use of all codes, laws and/or rules of procedure cited herein that may not be or represent law duly passed by the legislature of Maryland, the state of the constitutional republic, United States of America; that government directly created through the sovereign electors on Maryland; and/or that may not be or represent law enacted by that legislature acting in its jurisdiction over Maryland, the state of the republic and in its jurisdiction over its state citizens domiciled on the land thereon, is only used here to notice the Defendant(s) of that which is applicable to them and is not intended to be construed by this Court as an act of the Plaintiff granting jurisdiction of such law over him/them, nor to be understood by the Court to mean that Plaintiff, the living soul, confers, submits to, or has knowingly and intentionally entered into any such other jurisdiction alluded to thereby.

As grounds for relief requested, Plaintiff would show unto the Court the following:

### I.

### PARTIES

3.     PLAINTIFF, Joellyn Andrews, is an adult Sovereign woman on Maryland, a state of the Constitutional republic, United States of America Domiciled on the land, on Maryland, near 5636 Jefferson Pike

Frederick, Maryland state of the republic and in possession of property at 5638 Jefferson Pike Frederick, Maryland, state of the republic.

4.     The Defendant SELECT PORTFOLIO SERVICING INC. is engaged in the business of banking. The BANK is a Member of the Federal Reserve System.

II.

FACTUAL BACKGROUND

5.     On or about October 31, 2005 Joellyn Andrews conferred with ACCREDITED HOME LENDERS, SELECT PORTFOLIO SERVICING, Inc. 's predecessor, for whose actions Defendant is responsible to the Plaintiff,

6.     Plaintiff states in affidavit FRB, herein attached, she was either told or given to understand by ACCREDITED HOME LENDERS. or it was represented or allowed to be understood in the language and terms of the loan contract presented to her that in order to receive the loan she sought to purchase the property she would have to give ACCREDITED HOME LENDERS a note promising to pay back the amounts loaned, **the full face principle of which was represented by the language of the contract as being the amount risked of ACCREDITED HOME LENDERS or its successor's own or depositor's assets** in the making of the loan. (See exhibit "C", facsimile of the document being the credit agreement between the parties to this dispute.) .

7.     Plaintiff states she was either told or given to understand by ACCREDITED HOME LENDERS. or it was represented or allowed to be understood in the language and terms of the loan contract presented to her, the note given by her would further provide for these amounts to be to payed back with interest compounded over time, starting at the rate set, the per centage of which calculated in the contract always representing the rate of interest being charged against the principal **balance of the holder's assets and deposits still then at risk** in the amortization of the loan, **and** that she would be expected to grant the total of Plaintiff's property being financed **as collateral necessary to secure the loan, again, representing the actual face amount of a holder's assets and deposits at risk in the making or purchase of it.** Plaintiff states, this is what she was told or what she was told the documents **meant** and **said or was allowed to be understood** by her in his signing of them. (See again exhibit "C", facsimile of the document being the credit agreement between the parties to this dispute.) .

8.     After certain negotiations, it was represented to Joellyn Andrews, that ACCREDITED HOME LENDERS would make a loan to her of **$279,920** on these terms, and based on the representations as stated or allowed to be understood in the language and terms of the loan contract, as noted above, starting at an annual rate of interest of 7.490%.

9.     In reliance on the representations made by ACCREDITED HOME LENDERS at this time and previous times as noted above stated or allowed to be understood in the language and terms of the loan contract including the terms of interest cited and calculable in the agreement, Plaintiff entered into this contract and executed and delivered to ACCREDITED HOME LENDERS, Defendant's predecessor, for whose actions, the Promissory Note (EXHIBIT N[) agreeing to pay back **$279,920** according to the terms therein, and wherein Plaintiff further agreed to encumber and pledge the total of Plaintiff's property being financed (EXHIBIT D) on best belief and knowledge, valued at $300,000 represented to Plaintiff and allowed to be understood by her **as collateral necessary to secure the loan to her of $279,920 understood by her to be representing the actual face amount of a holder's assets and deposits at risk in the making or purchase of it.**

10.     Plaintiff affirms at the time of the making of the loan, it was represented **to her** by ACCREDITED HOME LENDERS and its agents or allowed by them to be understood in the language and terms of the loan contract the lender **was** going to lend the full face principal of **$279,920** to the Plaintiff from the then existing assets of ACCREDITED HOME LENDERS.

11.     Yet, as shown from authoritative sources of the banking and accounting professions, Federal Reserve Bank publications, (excerpts herein attached Exhibit G) and other authoritative sources of the banking industry (exhibit M, herein attached); ACCREDITED HOME LENDERS' nor its successors SELECT PORTFOLIO SERVICING  extended full face principal of the loan's then current value in the making or purchase of it, but that the amount of this face principal actually at risk to makers or the successors in purchase of the loan was **only the cash reserve requirement ratio fractional reserve percentage of their assets and deposits required to be held and actually placed at risk** of the actual face principal of the loan; the fractional reserve percentage of this loan referenced herein required of ACCREDITED HOME LENDER Sas the successor in its federal reserve district on that date and prevailing at that time being determined from documentary evidence available from the TWELVTH district of the federal reserve system, (see the official TWELVTH district website http://www.federalreserve.gov/pubs/supplement/2005/01/table1_15.htm, ), to have been no more than 3% for  **ACCREDITED HOME LENDERS  and no more than 10.00% for SELECT PORTFOLIO SERVICING of the actual face principal amount of the loan made to the Plaintiff required to be at risk of  maker or  successor's assets and deposits in the making or purchase of the loan, calculable as an amount not more than $8397.60 for ACCREDITED HOME LENDERS  and $27,992 for SELECT PORTFOLIO SERVICING being the only amount of the maker or its successor's assets and deposits ever to have been at risk in the making of the loan of $279,920 unbeknownst to the Plaintiff at that time.**

12.     Further, based on these same authoritative sources of the banking and accounting professions, Federal Reserve Bank publications, (excerpts herein attached Exhibit G) and other authoritative sources of the banking industry (exhibit M, herein attached), the bulk of the face amount **$251,828 or 90.00%** of the loan was

made **without risk or liability** for it to **SELECT PORTFOLIO SERVICING**'s depositors, the bank's own assets or to any banks of the federal reserve system and as further shown from these same authoritative sources cited above, this percentage of the loan or its purchase represented only an expansion of the bank's depository institution credit as a bank of the federal reserve system engaged in the practice of fractional reserve banking. All of which Plaintiff has only come recently to understand.

Further, of the face amount , **$271,522.30 or 97.00%** of the loan was made **without risk or liability for it to ACCREDITED HOME LENDERS** and as further shown from these same authoritative sources cited above, this percentage of the loan represented only an expansion of the bank's depository institution credit as a bank of the federal reserve system engaged in the practice of fractional reserve banking. All of which Plaintiff has only come recently to understand.

13.     Plaintiff affirms, based on the facts herein cited and the authoritative sources of the banking and accounting professions noted above and self evident calculable facts based on the terms of the contract as written, ACCREDITED HOME LENDERS for whom SELECT PORTFOLIO SERVICING is responsible has allowed to be understood by the Plaintiff in the language and terms of the loan contract **calculable misrepresentations as to the actual costs and risks to the bank's assets and deposits in the loan.** The Plaintiff has relied on the same to their disadvantage they have unknowingly suffered since the beginning of the contract to the present under the terms as written.

14.     Further, Plaintiff affirms at the time of the making of the loan, it was represented **to her** or allowed to be understood in the language and terms of the loan contract that interest would be charged at the designated rate **(7.490% as an introductory rate, 7.625% as of September 9, 2012 and subject to change every month thereafter)** upon the full face value of the loan, when Plaintiff affirms self evident calculable facts based on the amortization schedule of the loan over the life of its payments citing the amount of interest to be paid monthly as a part of each monthly payment show the contract **does not constitute interest of 6.5% as an introductory rate, 7.625% as of September 9, 2012** or any future rate calculable in the loan contract **on the actual amount $8,397.60 of ACCREDITED HOME LENDERS assets and deposits that would ever be at risk in the life of the loan contract. But rather, according to the amortization schedule of payment divisions into principal and interest, (see exhibit AS attached), the interest actually being charged, even when calculated on the beginning amortization of the full amount of the lending bank's assets and deposits placed at risk by the loan is $1,747.17 the first month, $1,745.87 the second and totaling $21,676.27 in interest payments in the first year representing an actual rate of interest of 8291.532% charged on assets and deposits of the bank or its successors $8397.60 actually placed at risk in the purchase of the loan.**

15.    Further, Affiant. ... his self evident fact based on the amc. .zation schedule of payment divisions into principal and interest, (see exhibit AS attached), such schedule may be calculated out to show that even at these rates of interest cited above, against the actual amount the bank or its successor's have placed at risk of their assets and deposits in making the loan, the amount of principal applied in each scheduled payment would amortize this actual amount at risk by the banks in the loan **$8,397.60 in 4 months** of payments at this rate rather than the **30 years or 360 payments** provided for in the face of the loan contract resulting in **actual interest** to be compounded and paid over the life of the contract **on $8,397.60 the amount of assets and deposits of the bank, or any subsequent holder** actually placed at risk in this loan being a total of **$696,097.48** representing an interest rate based on the amortization schedule calculable from these total amounts of **8291.532%** charged against the **$8397.60** of the lender's actual assets and deposits placed at risk in the loan or its purchase which ACCREDITED HOME LENDERS combined with any subsequent holders in due course of the loan will **have** charged and gained from the Affiant over the life of the contract.

For **Select Portfolio Servicing** or any subsequent holder of the loan their **$ 27,992 being the only amount of any institution's assets and deposits ever to be at risk in the purchase of the loan would be** amortized in 16 months of payments at the rate of interest provided for in the face of the loan contract with the payment called for in the face of the contract resulting in **actual interest** to be compounded and paid over the life of the contract on the amount of assets and deposits of the bank $ 27,992 **or any subsequent holder** actually placed at risk in this loan being a total of **$674,052.23** representing an interest rate based on the amortization schedule calculable from these total amounts of **2408.016 %** charged against the **$ 27,992** of the bank's actual assets and deposits placed at risk in the loan which the lender would have charged and gained from the Affiant over the life of the contract.

16.    Based on the facts herein cited and the authoritative sources of the banking and accounting professions noted above and self evident calculable facts based on the terms of the contract as written, ACCREDITED HOME LENDERS and the Defendant as successor allowed to be understood by the Plaintiff in the language and terms of the loan contract **calculable misrepresentations to the Plaintiff as to the actual costs and risks to the bank's assets and deposits in the purchase of the loan and the actual rates of interest being charged the Plaintiff for this risk.** The Plaintiff has relied on the same to their disadvantage they have unknowingly suffered since the beginning of the contract under the terms as written.

17.    In addition, Plaintiff affirms she did encumber and pledge the total of Plaintiff's property being (EXHIBIT D) at best belief and knowledge, valued at $300,000 which Plaintiff affirms was represented to her and allowed to be understood by her **as collateral necessary to secure the loan to her of $279,920 or its purchase and understood by her to be representing the actual face amount of the bank's assets and deposits at risk in the purchase of it,** when based upon these facts cited above and upon self evident calculations from these facts, the maximum amount of any holder's assets and deposits at risk was

only $27,992, or ~~approximatv-02d31 mes Besstorm Med 08/17/09 required of the~~ Plaintiff to be risked in the loan, all unbeknownst to the Plaintiff.

18.     Based on the facts herein cited and the authoritative sources of the banking and accounting professions noted above and self evident calculable facts based on the terms of the contract as written, ACCREDITED HOME LENDERS and the Defendant as successor allowed to be understood by the Plaintiff in the language and terms of the loan contract **calculable misrepresentations to the Plaintiff as to these gross inequities of the actual risks to the bank's assets versus the risk to the Plaintiff in the contract.** The Plaintiff has relied on the same to their disadvantage they have unknowingly suffered since the beginning of the contract under the terms as written.

## LOAN TO DATE NOVEMBER 2008

19.     In 2008 Plaintiff affirms she continued to pay these terms of the contract when, as cited above. the self evident amortization schedule of the loan over the life of its payments citing the amount of interest to be paid monthly as a part of each monthly payment **did not constitute interest of 7.490%** or any future rate calculable in the loan contract on the **actual amount $8,397.60 of ACCREDITED HOME LENDERS or its successor's assets and deposits that would ever be at risk in the life of the loan contract. But rather, given that the actual interest rate charged on the outstanding principle balance and the fact that said interest rate varied every month since the inception of the loan, according to the monthly statements, (see exhibit AS attached), the interest actually being charged on the bank's assets and deposits placed at risk by the loan is $1,747.17 the first month, $1,745.87 the second and totaling $44,524.95 in interest payments to date, representing an actual annualized rate of interest of 66.112% if charged on ACCREDITED HOME LENDERS** or its successor's **assets and deposits that had originally been at risk.**

III.

GENERAL ALLEGATIONS OF CAUSES OF ACTION

20.     Plaintiff did not discover either the nature or the extent of these BREACHES OF CONTRACT, FRAUD AND DECEIT, DECEPTIVE TRADE PRACTICES, NEGLIGENT MISREPRESENTATION AND USURY perpetrated upon them by the Defendant or Defendant's predecessor for whom Defendant is responsible to the Plaintiff until a date on or about March , 2009. Plaintiff was not informed of and was **never** given the opportunity to know the actual rate of interest being charged on the bank's assets and deposits actually at risk in the making or purchase of the loan based on payments of the amounts required under the contract, or the inequities of the actual risks to the bank versus what she was required to risk in making the contract; thus violating the rights of the Plaintiff to full disclosure of all material facts of actual risk and interest underlying the contract.

21.   Defendant's failure to make these material disclosures was fraudulent, misleading, without care of the true facts, and with callous disregard for the rights of said Plaintiff, with the intention that the Plaintiff would be deceived and placed at the unconscionable disadvantage and abuse Plaintiff would unknowingly suffer under the terms of the contract as written.

CAUSES OF ACTION

IV.

COUNT ONE

BREACH OF CONTRACT

22.   Plaintiff realleges all of the foregoing.

23.   The Defendant and Defendant's predecessor for whom Defendant is responsible to the Plaintiff breached the Contract with the Plaintiff (see exhibit "C", facsimile of the documents constituting the contract between the parties to this dispute.) made on September 1, 2007 heretofore referenced and enumerated, in that as noted in II above, Defendant:

**1) had represented and allowed to be understood in the language and terms of this loan contract calculable misrepresentations to the Plaintiff or had failed to disclose material fact to her that ACCREDITED HOME LENDERS or its successor the Defendant would not extend full face principal of the loan's then current value, but that the amount of this face principal actually at risk was only the cash reserve requirement ratio fractional reserve percentage of their assets and deposits required to be held and actually placed at risk of the actual face principal of the loan; the fractional reserve percentage of this loan referenced herein required of ACCREDITED HOME LENDERS or the successor Defendant in its federal reserve district on that date and prevailing at that time being determined from documentary evidence available from the TWELVTH district of the federal reserve system, (see the official TWELVTH district website http://www.federalreserve.gov/pubs/supplement/2005/01/table1_15.htm, exhibit FR ), to have been only 3% of the actual face principal amount of the loan made to the Affiant or not more than 10% for any successor such as the Defendant required to be at risk of the bank's assets and deposits in its loan or its purchase, calculable as an amount not more than $8,397.60 for ACCREDITED HOME LENDERS or $ 27,992 for the Defendant being the only amount of assets and deposits ever to have been at risk in the loan of $279,920, unbeknownst to the Plaintiff at that time.**

24.   The Defendant and Defendant's predecessor for whom Defendant is responsible to the Plaintiff breached the Contract with the Plaintiff (see exhibit "C", facsimile of the documents constituting the contract between the parties to this dispute.) made on September 1, 2007 heretofore referenced and enumerated, in that as noted in II above, Defendant:

25. 2) had represented and understood in the language and terms of this loan contract **calculable misrepresentations to the Plaintiff or had failed to disclose material fact to her** that the interest to be charged at the designated rate of **7.490% subject to change in month 61** upon the full face value of the loan, when Plaintiff affirms self evident calculable facts based on the amortization schedule of the loan over the life of its payments citing the amount of interest to be paid monthly as a part of each monthly payment show the contract **does not constitute interest of 7.490% subject to change in month 61** or any future rate calculable in the loan contract **on the actual amount $8,397.60 of ACCREDITED HOME LENDERS assets and deposits or $ 27,992 for the Defendant or its successors that would ever be at risk in the life of the loan contract. But rather, according to the amortization schedule of payment divisions into principal and interest, (see exhibit AS attached), the interest actually being charged by ACCREDITED HOME LENDERS for whose actions Defendant is responsible to the Plaintiff in this contract, even when calculated on the beginning amortization of the full amount of the lending bank's assets and deposits placed at risk by the loan is $2,968.63 the first month, $2,968.63 the second and totaling $34,800.00 in interest payments in the first year representing an actual rate of interest of 66.112% charged on assets and deposits of ACCREDITED HOME LENDER'S $8,397.60 actually placed at risk in the loan.**

26. The Defendant and Defendant's predecessor for whom Defendant is responsible to the Plaintiff breached the Contract with the Plaintiff (see exhibit "C", facsimile of the documents constituting the contract between the parties to this dispute.) made on September 1, 2007 heretofore referenced and enumerated, in that as noted in II above, Defendant:

27. 3) had represented and allowed to be understood in the language and terms of this loan contract, **calculable misrepresentations to the Plaintiff or had failed to disclose material fact to him** that the amortization schedule of payment divisions into principal and interest, (see exhibit AS attached), when calculated out show that even at the rates of interest cited above, against the actual amount the bank has placed at risk of its assets and deposits in making the loan, the amount of principal applied in each scheduled payment would amortize this actual amount at risk by the banks in the loan **$8,397.60 in 4 months** of payments at this rate rather than the **30 years or 360 payments** provided for in the face of the loan contract resulting in **actual interest** to be compounded and paid over the life of the contract **on $8,397.60, the amount of assets and deposits of the bank,** actually placed at risk in this loan being a total of **$696,097.48** representing an interest rate based on the amortization schedule calculable from these total amounts of 8291.532% charged against the $8,397.60 of the lender's actual assets and deposits placed at risk in the loan which **ACCREDITED HOME LENDERS** combined with any subsequent holders in due course of the loan will **have** charged and gained from the Affiant over the life of the contract.

For **Select Portfolio Servicing** or any subsequent holder of the loan their **$ 27,992 being the only amount of any institution's assets and deposits ever to be at risk in the purchase of the loan would be** amortized in 16 months of payments at the rate of interest provided for in the face of the loan contract with the payment called for in the face of the contract resulting in **actual interest** to be compounded and paid

over the life of the contract on    amount of assets and deposits of t... bank **$ 27,992 or any subsequent holder** actually placed at risk in this loan being a total of **$674,052.23** representing an interest rate based on the amortization schedule calculable from these total amounts of **2408.016 %** charged against the **$ 27,992** of the bank's actual assets and deposits placed at risk in the loan which the lender would have charged and gained from the Affiant over the life of the contract.

26  Plaintiff did not discover the breaches of contract by these misrepresentations and failures of disclosure of these material facts until a date on or about March 2009. Defendant is responsible for the contract, pursuant to **MD Code 1-103** by these causes which supplement the provisions of a contract under Maryland law.

**MD Code 1-103**
> "Unless specifically waived by the parties to an agreement, the principles of law and equity: including the law merchant and the law relative to capacity to contract, principle and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement the provisions of a contract."

27  Again, Plaintiff was not informed of and was **never** given the opportunity to know **the actual costs and risks to the bank's assets and deposits in the making or purchasing of the loan and the actual rates of interest being charged the Plaintiff for this risk** based on payments of the amounts required under the contract, or these inequities of the actual risks to the bank versus what she was required to risk in making the contract thus damaging the Plaintiff by denying her the right to full disclosure of these material facts of actual risk and interest underlying the contract by which he would have known of these unconscionable inequities.

28  Further, these three breaches of contract have resulted in damages to Plaintiff in interest paid from the beginning of the contract to the present that **exceed** interest holders of the contract may have charged lawfully under the terms of the contract **on the risk to the bank's actual assets and deposits in the loan, $8,397.60 or $ 27,992 for the Defendant or its successors <u>had this been the face amount of the loan</u> represented and allowed to be understood by the Plaintiff in the language and terms of the contract; such amounts upon best belief and knowledge of the Plaintiff to be $40,072.45 from the beginning of the contract through the month of November 2008.** (See exhibit AS attached and exhibit AS1, under the terms of the written contract). Plaintiff has suffered and will continue to suffer financial damages in the amounts of **$40,072.45**

29  WHEREFORE PLAINTIFF DEMAND JUDGMENT, in such amounts of **$40,072.45** and that such amounts be ordered applied by the court first to the amortization of Defendant bank's or its successor's actual risk to its assets and deposits, **$ 27,992** as determined above in the purchasing of the loan until such actual risk has been extinguished, with immediate cancellation of the note thereupon and release of the deed of trust

held by Defendant bank or its ⌐.ccessor's to secure its risk under this ᴗ.eached contract ordered by the Court with all excesses unapplied to be paid to the Plaintiff as compensatory damages;

and Plaintiff's obligation under the original contract for the balance of the face of the loan $279,920 remaining unpaid, is also to be ordered discharged and released by Defendant bank as a further consequence of its breaches of contract;

and for PUNITIVE DAMAGES, in amounts to be determined by the court arising from these BREACHES OF CONTRACT by Defendant or its predecessors.

30. The Defendant and Defendant's predecessor for whom Defendant is responsible to the Plaintiff breached the Contract with the Plaintiff (see exhibit "C", facsimile of the documents constituting the contract between the parties to this dispute.) made on September 1, 2007 heretofore referenced and enumerated, in that as noted in II above, Defendant:

4) Defendant's predecessor had represented and allowed to be understood in the language and terms of this loan contract **calculable misrepresentations to the Plaintiff or had failed to disclose material fact to her as to the collateral still necessary to secure the bank's risk for the loan made to her of $279,920 understood by Plaintiff to be representing the actual face amount of the bank's risk in the making of it, when the actual amount of the bank's assets and deposits at risk was only $8397.60 , or approximately 35.7 times less than the amount of value required of the Affiant to be risked in the making of the loan, or no closer than 10.7 times less than** the total value of Plaintiff's property being financed (EXHIBIT D) estimated at **$300,000 required of the Plaintiff to be risked in the making of the loan for the Defendant or any subsequent holder all unbeknownst to the Affiant.**

30 WHEREFORE as a consequence for its actions and damages for this breach of contract PLAINTIFF prays the court further, that should default by Plaintiff occur under these terms ordered by the court on any remaining amount at that time of the bank's original principal of its actual assets and deposits at risk in the loan $ 27,992 Defendant or its successors shall be entitled **only to acceleration of those amounts due of the bank's actual assets and deposits still at risk and to foreclose for recovery only on these remaining amounts of actual damages suffered;** and for PUNITIVE DAMAGES, in amounts to be determined by the court arising from this BREACH OF CONTRACT by Defendant or its predecessors.

V.

COUNT TWO

FRAUD

31  Plaintiff realleges all the foregoing.

32  The Defendant entered into Contract with the Plaintiff (see exhibit "C", facsimile of the documents constituting the contract between the parties to this dispute.) on September 1, 2007 heretofore referenced and enumerated.

33  The Defendant's predecessor, ACCREDITED HOME LENDERS for whose actions   SELECT PORTFOLIO SERVICING is responsible to the Plaintiff in this contract , as noted in II above:

1) Defendant's predecessor had stated at or prior to the loan closing, or represented and allowed to be understood in the language and terms of this loan contract **calculable misrepresentations to the Plaintiff or had failed to disclose material fact to her** that the lender or it s successors **was not** going to extend the full face principal of **$279,920** to the Plaintiff from the then existing assets of the bank or its depositors as represented in the language and terms of the loan contract, but that the amount of this face principal actually at risk to the bank in he loan was **only the cash reserve requirement ratio fractional reserve percentage of the bank's assets and deposits required to be held and actually placed at risk** of the actual face principal of loans and loan purchases by banks and lending institutions in its federal reserve district on that date and prevailing at that time being determined from documentary evidence available from the **TWELVTH** district of the federal reserve system, (see the official **TWELVTH** district website **http://www.federalreserve.gov/pubs/supplement/2005/01/table1_15.htm**, exhibit FR ) to have been no more than **10% of the actual face principal amount of the loan made to the Plaintiff required to be at risk of the bank's assets and deposits or the Defendant as successor in the loan made to the Plaintiff on that date, calculable as an amount not exceeding $ 27,992 , being the only amount of defendant bank's or its successor's assets and deposits ever to have been at risk in the making or purchasing of the loan of $279,920 unbeknownst to the Plaintiff at that time.**

34.The Defendant's predecessor, ACCREDITED HOME LENDERS for whose actions  SELECT PORTFOLIO SERVICING is responsible to the Plaintiff in this contract , as noted in II above:

2) Defendant's predecessor had stated at or prior to the loan closing, or represented and allowed to be understood in the language and terms of this loan contract **calculable misrepresentations to the Plaintiff or had failed to disclose material fact to her** that the interest to be charged at the designated rate **7.490%** upon the full face value of the loan based on the amortization schedule of the loan over the life of its payments citing the amount of interest to be paid monthly as a part of each monthly payment **did not constitute interest of 7.490% as an introductory rate for 60 months** or any future rate calculable in the loan contract **on the actual amount $ 27,992    of defendant bank's or its successor's assets and deposits that would ever be at risk in the life of the loan contract. But rather, according to the amortization schedule of payment**

**divisions into principal and   interest, (see exhibit AS1 attached),  he interest actually being charged even when calculated on the beginning amortization of the full amount of the bank's assets and deposits placed at risk by the loan is $2,968.63 the first month, $2,968.63 the second and totaling $34,800.00 in interest payments in the first year representing an actual rate of interest of 66.112% charged on assets and deposits of the bank or its successors $ 27,992    actually placed at risk in the loan.**

35.The Defendant and Defendant's predecessor for whom Defendant is responsible to the Plaintiff breached the Contract with the Plaintiff (see exhibit "C", facsimile of the documents constituting the contract between the parties to this dispute.) made on September 1, 2007 heretofore referenced and enumerated, in that as noted in II above, :

3) Defendant's predecessor had stated at or prior to the loan closing, or represented and allowed to be understood in the language and terms of this loan contract **calculable misrepresentations to the Plaintiff or had failed to disclose material fact to her** that the amortization schedule of payment divisions into principal and interest, (see exhibit AS1 attached), when calculated out show that even at the rates of interest cited above, against the actual amount Defendant has placed at risk of its assets and deposits in making the loan, the amount of principal applied in each scheduled payment amortize this actual amount at risk by the bank in the loan, **$ 27,992,   in 19 months** of payments at this rate rather than the 30 years or 360 payments provided for in the face of the loan contract resulting in **actual interest** to be compounded and paid over the life of the contract **on $ 27,992 , the amount of assets and deposits of the bank, or any subsequent holder** actually placed at risk in this loan being a total of **$899,846.08** representing an interest rate based on the amortization schedule calculable from these total amounts of **1670.141%** charged against the **$ 27,992** of the lender's actual assets and deposits placed at risk in the loan or its purchase which  SELECT PORTFOLIO SERVICING combined with any subsequent holders in due course of the loan will **have** charged and gained from the Affiant over the life of the contract.

34  Plaintiff did not discover these misrepresentations and failures of disclosure of these material facts perpetrated upon them by the Defendants until a date on or about March 2009.

35  Again, Plaintiff was not informed of and was **never** given the opportunity to know the actual rate of interest being charged on the bank's assets and deposits actually at risk in the loan based on payments of the amounts required under the contract, or these inequities of the actual risks to the bank versus what she was required to risk in making the contract.

36  Defendant's failure to make these material disclosures was false, fraudulent, misleading, or made recklessly, without care of the true facts, and with callous disregard for the rights of the Plaintiff, with the

intention that the Plaintiff wou. ely on the same to their deception . . .J the unconscionable disadvantage, abuse and damage they would unknowingly suffer under the terms of the contract as written.

37. As a proximate result of Defendant's false and fraudulent misrepresentations and Plaintiff's justifiable reliance upon the same, first, Plaintiff has suffered damage having been deceived into paying alleged 'principle' with compound interest on the full face of the note as if 100% of the alleged 'principle' were a loss to the deposits, assets or cash reserves of the bank and of risk to recover, as represented and allowed to be understood in the language and terms of the loan contract the bank had induced him to accept, **which was not true.**

38  Plaintiff is damaged in interest paid from the beginning of the contract to the present that **exceed interest holders of the contract may have charged lawfully under the terms of the contract on the risk to the bank's actual assets and deposits in the loan, $ 27,992  had they been the face amount of the loan, as was represented to and allowed to be understood by the Plaintiff in the language and terms of the contract; such amounts upon best belief and knowledge of the Plaintiff to be $40,072.45 from the beginning of the contract through the month of November 2008** (See exhibit AS attached and exhibit AS1, amortization schedules under the terms of the written contract). Plaintiff has suffered and will continue to suffer financial damages in the amounts of **$40,072.45**

39  WHEREFORE PLAINTIFF DEMANDS JUDGMENT, in such amounts of **$40,072.45** and that such amounts be ordered applied by the court first to the amortization of Defendant bank's or its successor's actual risk to its assets and deposits **$ 27,992**  as determined above in the making or purchase of the loan until such actual risk has been extinguished, with immediate cancellation of the note thereupon and release of the mortgage/deed of trust held by Defendant bank to secure its risk under this fraudulent contract ordered by the Court with all excesses unapplied to be paid to the Plaintiff as compensatory damages;

and Plaintiff's obligation under the original contract for the balance of the face of the loan $279,920 remaining unpaid, is also to be ordered discharged and released by Defendant bank as a further consequence of its fraudulent breaches of contract;

and for PUNITIVE DAMAGES, in amounts to be determined by the court arising from these fraudulent misrepresentations and fraud in the inducement by Defendant or its predecessors.

40. The Defendant and Defendant's predecessor for whom Defendant is responsible to the Plaintiff breached the Contract with the Plaintiff (see exhibit "C", facsimile of the documents constituting the contract between the parties to this dispute.) made on September 1, 2007 heretofore referenced and enumerated, in that as noted in II above, :

Defendant's predecessor had ⁀ .resented and allowed to be understoc...n the language and terms of this loan contract **calculable misrepresentations to the Plaintiff or had failed to disclose material fact to her as to the collateral still necessary to secure the bank's risk for the loan made to her of $279,920 understood by Plaintiff to be representing the actual face amount of the bank's risk in the making of it, when the actual amount of the bank's assets and deposits at risk was only $8397.60 , or approximately 35.7 times less than the amount of value required of the Affiant to be risked in the making of the loan, or no closer than 10.7 times less than** the total value of Plaintiff's property being financed (EXHIBIT D) estimated at $300,000 required of the Plaintiff to be risked in the making of the loan for the Defendant or any subsequent holder all unbeknownst to the Affiant.

40 WHEREFORE as a consequence for its actions and damages for these fraudulent misrepresentations by Defendant, PLAINTIFF prays the court further, that should default by Plaintiff occur under these terms ordered by the court on any remaining amount at that time of the bank's original principal of its actual assets and deposits at risk in the loan **$ 27,992,** Defendant or its successors shall be entitled **only to acceleration of those amounts due of the bank's actual assets and deposits still at risk and to foreclose for recovery only on these remaining amounts of actual damages suffered;** and for PUNITIVE DAMAGES, in amounts to be determined by the court arising from these fraudulent misrepresentations and fraud in the inducement by Defendant or its predecessors.

VI.

COUNT THREE

DECEPTIVE TRADE PRACTICES

41 Plaintiff reaffirms and realleges the facts and allegations set forth above and by this reference incorporates the same as though fully set forth herein.

42 The actions of Defendant's predecessor for whom Defendant is responsible to the Plaintiff and Defendant in this contract, as cited and described in II above and their continued enforcement on the Plaintiff constitute unfair and deceptive trade practices and misappropriation in violation of law.

43 Specifically, Defendant, has acted in bad faith in its actions, including, but not limited to, **making calculable misrepresentations to the Plaintiff as to the actual costs and risks to the bank's assets and deposits in the making or purchase of the loan and calculable misrepresentations as to the actual rate of interest being charged the Plaintiff for this risk on the bank's assets and deposits actually at risk based on interest payments of the amounts required under the contract, and calculable misrepresentations to the Plaintiff as to the collateral necessary to secure the bank's risk for the loan made to her of $279,920 understood by Plaintiff to be representing the actual face amount of the bank's risk in the making or purchase of it when the actual amount of the bank's assets and deposits at risk was only $ 27,992 , versus the gross inequity of the value of Plaintiff's property being financed**

**(EXHIBIT D) estimated at a** ~~ue~~ of **$300,000 required of the Pla...iff to be risked in the purchase of the loan,** constitute Deceptive Trade Practices as defined in:

### § 13-301. Unfair or deceptive trade practices defined.

Unfair or deceptive trade practices include any:

(1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;
(3) Failure to state a material fact if the failure deceives or tends to deceive;

44  As a consequence of the foregoing, Plaintiff has suffered and will continue to suffer financial loss in excess of **$40,072.45 being the amount of interest paid by** Plaintiff from the beginning of the contract to the present that **<u>exceed</u>** interest holders of the contract may have charged lawfully under the terms of the contract **on the risk to the bank's actual assets and deposits in the loan, $ 27,992 <u>had they been the face amount of the loan</u>, as was represented to and allowed to be understood by the Plaintiff in the language and terms of the contract; such amounts upon best belief and knowledge of the Plaintiff to be $40,072.45 from the beginning of the contract through the month of November 2008** (See exhibit AS attached and exhibit AS1, amortization schedule of $279,920 under the terms of the written contract).

45  Further, Pursuant to the civil remedies provided by **section 1964©, of Title 18 U.S.C**, by virtue of Defendant's bad faith conduct, Plaintiff is entitled to **three times** the amount of actual damages for engaging in deceptive trade practices.

46  WHEREFORE PLAINTIFF DEMANDS JUDGMENT, in such amounts of **3 X $40,072.45** and that such amounts be ordered applied by the court first to the amortization of Defendant bank's actual risk to its assets and deposits  **$ 27,992**  as determined above in the making or purchasing of the loan until such actual risk has been extinguished, with immediate cancellation of the note thereupon and release of the deed of trust held by Defendant bank to secure its risk under these DECEPTIVE TRADE PRACTICES ordered by the Court with all excesses unapplied to be paid to the Plaintiff as compensatory damages;

and Plaintiff's obligation under ə original contract for the balance of t... face of the loan $279,920 remaining unpaid, is also to be ordered discharged and released by Defendant bank as a further consequence of its breaches of contract;

and for other PUNITIVE DAMAGES, in amounts to be determined by the court arising from these DECEPTIVE TRADE PRACTICES by Defendant or its predecessors.

VII.

COUNT FOUR

NEGLIGENT MISREPRESENTATION

47 Plaintiff reaffirms and realleges the facts and allegations set forth above, and by this reference incorporates the same as though fully set forth herein.

48 Defendant did negligently withhold material fact and cause to be understood negligent misrepresentations to Plaintiff including, but not limited to, **leaving to be understood calculable misrepresentations to the Plaintiff as to the actual costs and risks to the bank's assets and deposits in the purchasing of the loan and calculable misrepresentations as to the actual rate of interest being charged the Plaintiff for this risk on the bank's assets and deposits actually at risk based on interest payments of the amounts required under the contract, and calculable misrepresentations to the Plaintiff as to the collateral necessary to secure the bank's risk for the loan made to her of $279,920 understood by Plaintiff to be representing the actual face amount of the bank's risk in the making of it when the actual amount of the bank's assets and deposits at risk was only $ 27,992 versus the gross inequity of the value of Plaintiff's property being financed (EXHIBIT D) at best belief and knowledge, valued at $300,000 required of the Plaintiff to be risked in the making of the loan.**

49 These misrepresentations were false and misleading and without sufficient basis of information with the intent that Plaintiff would rely on them and continue in this loan transaction carried on under these conditions. Plaintiff did rely on the intentional bad faith and negligent misrepresentations of Defendant to his detriment.

50 Defendant did intentionally and negligently conceal the true facts which were known to it and unknown to Plaintiff.

51 As a direct and proximate result of the withholding of these material facts in intentional and negligent misrepresentations of Defendant to Plaintiff, Plaintiff has suffered and will continue to suffer financial loss and damage in excess of **$40,072.45 being the amount of interest paid by** Plaintiff from the **beginning of the contract through the month November 2008** that <u>exceed</u> interest holders of the contract may have

charged lawfully under the ter...  ..of the contract **on the risk to the bai... s actual assets and deposits in the loan, $ 27,992  had they been the face amount of the loan,** as was represented  and allowed to be understood by the **Plaintiff in the language and terms of the contract; such amounts upon best belief and knowledge of the Plaintiff to be $40,072.45 from the beginning of the contract through the month of November 2008.** (See exhibit AS attached and exhibit AS1, amortization schedules under the terms of the written contract).

52   WHEREFORE PLAINTIFFS DEMAND JUDGMENT, in such amounts of **$40,072.45;** and that such amounts be ordered applied by the court first to the amortization of Defendant bank's actual risk to its assets and deposits  **$ 27,992**  as determined above in the making of the loan until such actual risk has been extinguished, with immediate cancellation of the note thereupon and release of the mortgage/deed of trust held by Defendant bank to secure its risk under these negligent misrepresentations ordered by the Court with all excesses unapplied to be paid to the Plaintiff' as compensatory damages;

and for other PUNITIVE DAMAGES, in amounts to be determined by the court arising from these negligent misrepresentations by Defendant or its predecessors.

VIII.

COUNT FIVE

USURY

53  Plaintiff reaffirms and realleges the facts and allegations set forth above and in Article II, and by this reference incorporates the same as though fully set forth herein.

54  The contract between Plaintiff and Defendant is void ab initio because the interest collected thereunder is usurious.

Pursuant to Title 12 Credit Regulations   Subtitle 1 Interest and Usury

**§ 12-102. General legal rate of interest.**

Except as otherwise provided by law, a person may not charge interest in excess of an effective rate of simple interest of 6 percent per annum on the unpaid principal balance of a loan.

55  The interest to be charged at the designated rate 7.490% upon the full face value of the loan based on the amortization schedule of the loan over the life of its payments citing the amount of interest to be paid monthly as a part of each monthly payment **did not constitute interest of 7.490% as an introductory rate for 60 months** or any future rate calculable in the loan contract **on the actual amount   $ 27,992   of**

defendant bank's assets and deposits that would ever be at risk in the life of the loan contract. But rather, according to the amortization schedule of payment divisions into principal and interest, (see exhibit AS attached), the interest actually being charged even when calculated on the beginning amortization of the full amount of the bank's assets and deposits placed at risk by the loan is $2,968.63 the first month, $2,968.63 the second and totaling $34,800.00 in interest payments in the first year representing an actual rate of interest of 66.112% charged on assets and deposits of the bank or its successors $ 27,992 actually placed at risk by the loan; the actual rate of interest being charged in subsequent years on the remainder of the assets and deposits of the bank  $ 27,992 actually placed at risk by the loan under the contract decreasing only slightly as indicated in II above.

56  As a result of the usurious demands of the Defendant, and the fraud and deceit respecting interest, committed and perpetrated on the Plaintiff by the Defendant, Plaintiff has suffered and will continue to suffer financial loss and damage in excess of **$40,072.45 being the amount of interest paid by Plaintiff from the beginning of the contract through the month November 2008** that <u>exceed</u> interest holders of the contract may have charged lawfully under the terms of the contract **on the risk to the bank's actual assets and deposits in the loan,  $ 27,992   <u>had they been the face amount of the loan,</u> as was represented to and allowed to be understood by the Plaintiff in the language and terms of the contract; such amounts upon best belief and knowledge of the Plaintiff to be $40,072.45 from the beginning of the contract through the month of November 2008.** (See exhibit AS attached and exhibit AS1, amortization schedule under the terms of the written contract.)

57  The difference between **amounts of interest paid by** Plaintiff from the beginning of the contract through the month November 2008and the interest holders of the contract may have charged lawfully under the terms of the contract **on the risk to the bank's actual assets and deposits in the loan, $ 27,992   <u>had they been the face amount of the loan</u>, as was represented to and allowed to be understood by the Plaintiff in the language and terms of the contract constitutes USURY. Such amounts upon best belief and knowledge of the Plaintiff to be $40,072.45 from the beginning of the contract through the month of November 2008. (See exhibit AS attached and exhibit AS1, amortization schedule  under the terms of the written contract.)**

58  WHEREFORE PLAINTIFF DEMANDS JUDGMENT, in such amounts of **$40,072.45** and that such amounts be ordered applied by the court first to the amortization of Defendant bank's actual risk to its assets and deposits  **$ 27,992**  as determined above in the making of the loan until such actual risk has been extinguished, with immediate cancellation of the note thereupon and release of the mortgage/deed of trust held by Defendant bank to secure its risk under this USUROUS contract ordered by the Court with all excesses unapplied to be paid to the Plaintiff as compensatory damages;

and for other PUNITIVE DAMAGES, in amounts to be determined by the court arising from these negligent misrepresentations by Defendant or its predecessors.

## PRAYER

A.  Wherefore Plaintiffs are entitled to trial by jury on the facts in controversy and the factual questions of the Defendantr's BREACHES OF CONTRACT, FRAUD AND DECEIT, DECEPTIVE TRADE PRACTICES, NEGLIGENT MISREPRESENTATION AND USURY, with judgment and damages both actual and punitive as found by the jury; with the jury duly and properly instructed as the appropriate law applying to the case.

B.  The Plaintiffs demand the relief set out above and such other relief as may be just and proper as follows:

1.  For BREACHES OF CONTRACT **$40,072.45**

2.  For FRAUD **$40,072.45**

3.  For DECEPTIVE TRADE PRACTICES **$40,072.45** and pursuant to **section 1964, of Title 18 U.S.C,** by virtue of Defendant's predecessor's and Defendant's bad faith conduct Plaintiff is entitled to **three times** the amount of actual damages for engaging in deceptive trade practices making a final total for this cause of **3 X $40,072.45** due the Plaintiff.

4.  For NEGLIGENT MISREPRESENTATION **$40,072.45**

5.  For USURY **$40,072.45**

Amounts totaling **7 X $40,072.45**

and that such amounts be ordered applied by the court first to the amortization of Defendant bank's actual risk to its assets and deposits **$ 27,992** as determined above in the making of the loan until such actual risk has been extinguished, with immediate cancellation of the note thereupon and release of the mortgage/deed of trust held by Defendant bank to secure its risk under this breached contract ordered by the Court with all excesses unapplied to be paid to the Plaintiff' as compensatory damages;

and Plaintiff's obligation under the original contract for the balance of the face of the loan **$279,920** remaining unpaid, is also to be ordered discharged and released by Defendant bank as a further consequence of its breaches of contract;

and for PUNITIVE DAMAGES, in amounts to be determined by the court arising from these acts by Defendant or its predecessors.

C.    And further, th:   it be ordered SELECT PORTFOLIC SERVICING INC foreclosure action against the Plaintiff's property pertaining to this note be presently enjoined and the terms here ordered by the court instated, and that should default by Plaintiff occur under these terms ordered by the court on any remaining amount at that time of the bank's original principal of its assets and deposits at risk in the loan **$ 27,992** Defendant or its successors shall be entitled only to acceleration of those amounts due of the bank's assets and deposits still at risk and to foreclose for recovery only on these remaining amounts of actual damages suffered.


IX.

COUNT SIX


LACK OF JURISDITION AND STANDING OF DEFENDANT TO ENFORCE THE RIGHTS OF CONTRACT IN FORECLOSURE


**59  Whether any parties for whom** SELECT PORTFOLIO SERVICING INC. **is acting is holder in due course of the original, unconverted, debt instruments who would have personal jurisdiction and standing as legal holders of the debt to exercise this contract in their own name** or whether such note/contract between  SELECT PORTFOLIO SERVICING . and Joellyn Andrews survives today has not been established by the defendants **by affidavit or other competent fact witness.**

As stated in Plaintiff's affidavit ACI, herein attached:

"Affiant affirms that In January 2009 she contacted Accredited Home Lenders by telephone and spoke with one  Lisa Mitchell  in customer service there who  told me **that on 4/1/08 they sold the loan to Select Portfolio Servicing Inc.**
Lisa Mitchell also told me that **the loan was placed in Mortgage Back Security Station Trust 2005-4.**

Affiant affirms that In January 2009  she then contacted Select Portfolio Servicing Inc. and spoke with one Iana Zamora **who confirmed aquisition of the loan.**
Affiant affirms that In January 2009  she  contacted Select Portfolio Servicing Inc. again and  a customer service employee  who then said **the loan was held in Mortgage Back Security Station** Trust, but did not give particular identification  as to where it was located, or exactly which one.

Affiant affirms that On 2/1/09 she spoke with one  Gina Hiatt of Select Portfolio Servicing Inc in the Bankruptcy department who  told me that they were **only servicer of  this loan for Accredited Home Lenders  who was still the legal holder of it** with the  date of the transfer of service being 2/1/09.
I told her that the date Select Portfolio Servicing Inc obtained this loan was back in 4/1/08.  Yet she insisted that they only service this loan for Accredited Home Lenders.

On 2/18/09,  Affiant contacted again Accredited Home Lenders  and spoke with one Claudette Steward  regarding the motion for relief from stay they filed in my bankruptcy case *after* the loan itself

had been sold to another hc    er. **She was unable to explain to    e why they would file a motion when they no longer owned the claim.**
She then also stated that **Accredited Home Lenders** had *never* actually owned this loan, and had merely been a servicer from the start.


As by the authority of Defendant's own offices, **the loan may have been sold to Mortgage Back**

**Security Station Trust 2005-4.** Debtor affirms she has done an extensive search on the Securities and

Exchange Commission website for an entity of this name but has found none.

However, From the Securities and Exchange Commission, Release nos. 33-6518; 34-50905; File No. S7-21-

04, RIN 3235-AF74 ASSET BACKED SECURITIES; Final Rule; request for comment, (relevant portions herein

attached ABS) we find on pages 10 and 11 under the heading **"Overview A. What are Asset-Backed**

**Securities?"**

**….In a basic securitization   structure, an entity, …known as a sponsor, originates or otherwise**

**acquires a pool of financial assets….It then sells the financial assets…..to a specifically created**

**investment vehicle that issues securities "backed" or supported by those financial assets….."**

**"The ABS market….has rapidly become an important part of the U.S. capital markets. One source**

**estimates 2003 new issuance close to $800 billion."**

**The footnote to this (30) states, "The four primary asset classes currently securitized are residential**

**mortgages, automobile receivables, credit card receivables and student loans, which represent**

**approximately 52%, 19%, 16% and 9% of 2003 new issuance, respectively."**

This being the case, that means as far back as 2003,   **416  billion dollars in mortgage loan receivables**

accounted for 52% of this total **Asset-Backed Securities** market, and as indicated, such market has grown

each year since the creation and use of such financial vehicles began in about 1990 at 46.8 billion dollars,

which gives rise to reasonable suspicion **this** mortgage loan account may have been part of  such an **Asset-**

**Backed Securities** pool, and if so, as indicated it would have been sold to and  owned by the **"specifically**

**created investment vehicle that issues securities "backed" or supported by those financial assets….."**

and, as we have stated,  could not then or now be actually held or owned by the claimant, if it is still in such an

**Asset-Backed Securities** pool. Defendant  offers no affirmation that the debt instruments can actually be

produced to evidence, if this is the case, to support their affirmation they are holders of it to support their

standing to enforce the contract. .


60  Based on the information provided in the affidavits, excerpts from a Prospectus for a CWABS

ASSET-BACKED CERTIFICATES TRUST, ABCT attached, which is factual documentation of the uses made

of other actual mortgage debt instruments in the banking industry, and which shows there are dozens of such

Asset Backed Pools or Trusts named contracted with that trustee and mortgage servicer alone. And between

these the note may be traded numerous times after that. The prospectus shows in all of these, actual

**possession and legal title** has to be transferred to the individual Asset Backed Pool or Trust for the

investment vehicle to be legal. ...uch that claimant **could not** have still ...ned the instrument while it belonged to one of these others if it did. Making the question as to the legal holder of the debt whose rights to the contract would be represented by a claim is a material issue in this case.

61   On the basis of such documented practices Plaintiff here asserts the debt instruments i.e. note and deed of trust that are the subject of the contract in question, may have been sold to be part of such a folio of commercial paper of Asset Backed Certificates or Trusts in which the original legal debt instruments of this contract are being held or have been repurchased from such Asset Backed Certificates or Trusts as:

ALTERNATIVE LOAN TRUST,

Alternative Loan Trust,

CHL MORTGAGE PASS - THROUGH TRUST,

CHL Mortgage Pass-Through Trust,

CWABS ASSET-BACKED CERTIFICATES TRUST,

CWABS Asset-Backed Certificates Trust,

CWABS INC ASSET BACKED CERTIFICATES,

CWABS INC Asset-Backed Certificates,

CWALT INC - ALTERNATIVE LOAN TRUST,

CWALT, Inc. Alternative Loan Trust,

CWALT Inc Mortgage Pass-Through Certi,

CWHEQ Home Equity Loan Trust,

CWMBS INC - CHL MORTGAGE PASS-THROUGH,

CWMBS, INC. - CHL Mortgage Pass-Through, **or other folios of commercial paper in which the note and/or mortgage from this loan is or was being held in Asset Backed Certificates or Trusts of other titles not designated here;**

**OR,** these sources show In other cases, as may be shown from discovery, the loan has been sold into something called a **Master Trust or SPV (Special Purpose Vehicle)** for which Defendant, or a prior purchaser or maker of the loan has retained possession of the instruments of indebtedness, as will be shown by evidence produced from discovery of RECENT 8K FILINGS as required under the Securities Acts of the UNITED STATES of that entity with which my note is or was held in such Asset Backed Certificates or Trusts and by copies of the Pooling and Servicing agreement under which it is or was held and other documentation which may exist showing the Issuing Entity acting as managing underwriter or Depositor, the Seller and Sponsor, Master Servicer, Trustee, Originator, NIM Insurer, and the Cut-off and Closing Date of such arrangements that will verify the fact my instruments of indebtedness have been sold and may be held or have been repurchased from such Asset Pool or Trust by the Defendant, or a prior purchaser or maker of the loan.

62  In such case the loan may have **been** legally sold many times but the Defendant, or the original lender has **retained possession of the actual instruments** and there is nothing on the note or deed of trust marking this.

63  After some other bank conglomerate tells me they are the servicer or holder, these documents show it may legally be negotiated a dozen or more times even when they are supposed to officially have it. And therefore, whether the identified actual party in interest for these debts legally had title to the notes in question at the time this action was brought or their claim would be made is a material fact clearly in question. And unless further evidence is produced to support the standing of the Creditor to bring the claim, such question of the claimant's standing will be a material fact in dispute that must be resolved factually before their claim can be accepted.

64  **As well as may again be established by competent fact witness of these debt instruments themselves, also demanded in this case and to be demanded in discovery here and in the other debts cited, showing** markings on it or an allonge attached or reduced to computer disc showing that exchange, sale or transfer of the loan has been made by one or more of the holders of these instruments since the making of the loan and who actually is now the present legal and actual holder of these debts with standing to foreclose in its name.

65  Or as federal law we have cited shows, it may even now be owned by a GSE (**government sponsored enterprise**) being anyone of numerous Federal Mortgage Associations the government provides to purchase mortgage loans and provide stability to the housing industry and in each case it may not really belong to the claimants at all.

Pursuant to:

**2 USC § 622. Definitions**

**(8)** The term **"government-sponsored enterprise"** means a corporate entity created by a law of the United States that—
**(A)**
**(i)** has a Federal charter authorized by law;
**(ii)** is privately owned, as evidenced by capital stock owned by private entities or individuals;
**(iii)** is under the direction of a board of directors, a majority of which is elected by private owners;
**(iv)** is a financial institution with power to—
**(I)** make loans or loan guarantees for limited purposes such as to provide credit for specific borrowers or one sector; and
**(II)** raise funds by borrowing (which does not carry the full faith and credit of the Federal Government) or to guarantee the debt of others in unlimited amounts; and

And pursuant to

**TITLE 12 > CHAPTER 13 > SUBCHAPTER III > § 1717**          Prev  |
Next

**§ 1717. Federal National Mortgage Association and Government National Mortgage Association**

**(a) Creation; succession; principal and other offices**
**(1)** There is created a body corporate to be known as the "Federal National Mortgage Association", which shall be in the Department of Housing and Urban Development. The Association shall have succession until dissolved by Act of Congress. It shall maintain its principal office in the District of Columbia and shall be deemed, for purposes of venue in civil actions, to be a resident thereof. Agencies or offices may be established by the Association in such other place or places as it may deem necessary or appropriate in the conduct of its business.
**(b) Purchase and sale of insured and conventional mortgages; transactions in loans and advances of credit**

For the purposes set forth in section 1716 of this title and subject to the limitations and restrictions of this subchapter, each of the bodies corporate named in subsection (a)(2) of this section is authorized pursuant to commitments or otherwise, to purchase, service, sell, or otherwise deal in any mortgages which are insured under this chapter or title V of the Housing Act of 1949 [42 U.S.C. 1471 et seq.],

**(2)** For the purposes set forth in section 1716 (a) of this title, the corporation is authorized, pursuant to commitments or otherwise, to purchase, service, sell, lend on the security of, or otherwise deal in mortgages which are not insured or guaranteed as provided in paragraph (1) (such mortgages referred to hereinafter as "conventional mortgages"). No such purchase of a conventional mortgage secured by a property comprising one- to four-family dwelling units shall be made if the outstanding principal balance of the mortgage at the time of purchase exceeds 80 per centum of the value of the property securing the mortgage,

**TITLE 12 > CHAPTER 46 > SUBCHAPTER I > Part B > subpart 1 > § 4541**      Prev |
                                                                          Next

### § 4541. Regulatory authority

Except for the authority of the Director of the Office of Federal Housing Enterprise Oversight described in section 4513 (b) of this title and all other matters relating to the safety and soundness of the enterprises, the Secretary of Housing and Urban Development shall have general regulatory power over each enterprise and shall make such rules and regulations as shall be necessary and proper to ensure that this part and the purposes of the Federal National Mortgage Association Charter Act [12 U.S.C. 1716 et seq.] and the Federal Home Loan Mortgage Corporation Act [12 U.S.C. 1451 et seq.] are accomplished.

**66** And pursuant to United States Code Annotated, Title 12 Banks and Banking, Chapter 27 Real Estate Settlement Procedures, Sec. 2602 Definitions; Sec. 2604 Special Information Booklets; Sec. 2802 Definitions; RESPA Reg. X, Sec. 3500.2 Definitions; 3500.5 Coverage of RESPA; 3500.6 Special Information Booklet At Time Of Loan Application; and Sec. 3500.8 Use of HUD-1 or HUD-1A Settlement Statements, It is found that within a few days and up to several months after the closing of such mortgage loans the banking

entity will sell the mortgage and promissory note to a GSE (government sponsored enterprise) such as Freddie Mac or Fannie Mae. See United States Code Annotated, Title 2 The Congress, Chapter 17A Congressional Budget And Fiscal Operations, Secs. 621 and 622; Title 12 Banks And Banking, Chapter 13 National Housing, Subchapter III National Mortgage Associations, Sec. 1717 Federal National Mortgage Association and Government National Mortgage Association; Title 12 Banks And Banking, Chapter 46 Government Sponsored Enterprises, Sec. 4501 Congressional Findings; Sec. 4502 Definitions; Chapter 46 Government Sponsored Enterprises, Subchapter I Supervision And Regulation Of Enterprises, Part A Financial Safety And Soundness Regulator, Sec. 4511 Establishment Of Office Of Federal Housing Enterprise Oversight; Sec. 4512 Director; Sec. 4513 duty And Authority Of Director; Part B Authority Of Secretary, Subpart I General Authority, Sec. 4543 Public Access To Mortgage Information; Chapter 13 National Housing, Sec. 1723a General Powers Of Government National Mortgage Association and Federal National Mortgage Association and; Chapter 16 Federal Deposit Insurance Corporation, Sec. 1811 Federal Deposit Insurance Corporation; **such that virtually all single-family residential mortgage loans are classified as federally related mortgage loans.**

"Federal Home Loan Mortgage Corporation was "agency" subject to disclosure and reporting requirements of this section. **Rocap v Indick, C.A.D.C. 1976, 539 F.2d 174,176 U.S. App.D.C. 172"**

67  From the documentation cited herein it is seen that generally the banking entity that sold the deed of trust and promissory note to a GSE will sign a mortgage servicing contract with that GSE meaning that the banking entity is now a mortgage servicer. The monthly mortgage payments are sent to that mortgage servicer, they take a percentage of that payment and put it into an escrow account to cover property taxes, homeowners insurance, sewer, road or other assessments. The servicer takes their servicing fee off the balance and sends the remaining balance of principal and interest **onto the GSE.** See United States Code Annotated, Title 12 Banks And Banking, Chapter 11A Federal Home Loan Mortgage Corporation, Sec. 1454 Purchase And Sale Of Mortgages, Residential Mortgages, Conventional Mortgages, Terms And Conditions Of Sale Or Other Disposition, Authority To Enter Into, Perform And Carry Out Transactions; Chapter 27 Real Estate Settlement Procedures, Sec. 2605 Servicing Of Mortgage Loans And Administration Of Escrow Accounts; Regulations For Real Estate Settlement Procedures Regulation X, Part 3500 Real Estate Settlement Procedures Act; Sec. 3500.2 Definitions; and Sec. 3500.21 Mortgage Servicing Transfers

68  From the documentation further cited herein it is seen as to mortgage foreclosures of single family residential mortgages (federally related mortgage loans**) the only person that has the authority to commence such an action is the Secretary of Housing And Urban Development (HUD).** (The Secretary does have the authority to designate, in writing, natural or un-natural persons (corporations) to act as his foreclosure commissioner) See United States Code Annotated, Title 12 Banks And Banking, chapter 38A Single Family Mortgage Foreclosure, Sections 3752 – 3764

69 The Court is advi;   all government sponsored enterpri;  , (GSE) are subject to Freedom Of Information Act and Privacy Act requests. See U.S.C.A., Title 5, Sec. 552 Public Information, Agency Rules, Opinions, Orders, Records and Proceedings.

70 And pursuant to Plaintiff's right to make inquiries to the mortgage servicer requesting information pertaining to one's own mortgage loan, see United States Code Annotated, Title 12 Banks And Banking, Chapter 27 Real Estate Settlement Procedures, Sec. 2605 Servicing Of Mortgage Loans And Administration Of Escrow Accounts and; Part 3500 Real Estate Settlement Procedures Act, Sec. 3500.21 Mortgage Servicing Transfers. See Sec. 3500.21, (e) Duty of loan servicer, (2) Qualified written request, (ii) a mortgage servicer does NOT own the mortgage and promissory note meaning they do not have any equity interest in the mortgaged property. See U.S.C.A.; Title 11 Bankruptcy, Sec. 541 Property Of The Estate and other law referenced herein, **Plaintiff will demand of the Claimant the name of the GSE that the servicer is or was acting under contract with and the servicing contract between the GSE and any and all previous mortgage servicers and the designation of authority from the Sec. of HUD to the GSE, the mortgage servicer or any other party to act as the foreclosure commissioner for said mortgage loans.**
**And pursuant to these facts of how notes may be readily transferred and exchanged in the banking industry,** Plaintiff   will demand the right to have produced for the Court the original **Deed of trust and Promissory Note of each debt here disputed for examination by the Plaintiff and the Court** for evidence of such **markings on it or an allonge attached or reduced to computer disc showing what exchange, sale or transfer of the loan has been made by one or more of the holders of these instruments since the making of the loan and who actually is now the present legal and actual holder of this debt with standing to have foreclose performed in its name.**

71 Plaintiff has **specifically denied** in first hand affidavit, herein attached, the copy of an agreement submitted as evidence for these material facts of this dispute is the agreement I put my hand to and that this was my signature that was **on** that agreement until the **original contract** can be produced to determine this.

72 In the day of computer technology and the sophisticated means by which a document can be put together to make the copies say whatever the bank wants to have them say with my signature from the original attached in fact is **no proof of anything without competent fact witness they still hold the actual debt instrument to make claim, and can show what the original contract actually was, or my agreement to it, as the subject matter of this dispute giving jurisdiction for the Court to hear their claim.** And yet their pleadings have provided **no factual evidence or competent fact witness by affidavit or otherwise** to demonstrate this despite numerous requests.

73 **Where the foreclosing party cannot prove the existence of the note or the substance of the agreement in it, that it is what the offending party agreed to, and that they are still holders to enforce it, then there is no note, there is no agreement, and there is no authority for them to enforce anything empowering them to bring a claim.**

74  As a matter of law, To recover on a promissory note, the defendant must prove: (1) the existence of the note in question; (2) that the party sued signed the note; (3) that the defendant is the owner or holder of the note; and (4) that a certain balance is due and owing on the note. See *In Re: SMS Financial LLc. v. Abco Homes, Inc.* No.98-50117 February 18, 1999 (5th Circuit Court of Appeals) and the Courts have held further no part payments should be made on the bond or note unless the person to whom payment is made is able to produce the bond or note and the part payments are endorsed thereon.

75  **If no one is able to produce the "instrument" there is no competent evidence before the Court that any party is the holder of the alleged note or the true holder in due course.** Further, Common law also dictates that the defendant prove the existence of the alleged note in question, prove that the party sued signed the alleged note, prove that the plaintiff is the owner and holder of the alleged note, and prove that certain balance is due and owing on any alleged note. Federal Circuit Courts have ruled that the only way to prove the perfection of any security is by actual possession of the security. See *Matter of Staff Mortg. & Inv. Corp.*, 550 F.2d 1228 (9th Cir 1977).

76  Possession establishes a prima facie case of ownership. Leathers v. Turner, 75 Ga.App. 62, 41 S.E.2d 921 (1947). And proof of possession by production of the instrument entitles the holder to recover on it unless the opposing party establishes a defense. U.C.C. § 3- 307(2). *Cf.* Pitillo v. Demetry, 112 Ga.App. 643, 145 S.E.2d 792 (1965)

77  "In a suit on negotiable instruments, the burden is initially on the party suing on the instruments to show *first* that he is a *holder* of the instruments sued on. UCC § 3-302; Hawkland, Cases on Commercial Paper and Bank Deposits and Collections 183 (1967).

78  We likewise note that defendants failed to submit the reverse sides of the notes in question. No guarantee has been afforded plaintiff that the notes have not been negotiated nor has security been posted; no recovery in these circumstances would be possible in the state courts. Perkins v. Crittenden, 462 S.W.2d 565 (Tex.Sup.1970)

79  The defect in pleading by defendants suing on notes that as holders of the notes they were entitled to bring the action and the lack of substantiation could not be cured by plaintiff's failure to raise the issue on summary judgment without unjustifiably shifting the defendant's burden of establishing their cause of action to plaintiff. V.T.C.A., Bus. & C. § § 3.301, 3.307(b), 3.603; Fed.Rules Civ.Proc. rule 56(c), 28 U.S.C.A

80  Absence of proof that defendant's as holders of notes sued on were entitled to bring the action was fatal to defendant's claim for summary judgment. V.T.C.A., Bus. & C. § § 3.301, 3.307(b), 3.603; Fed.Rules Civ.Proc. rule 56(c), 28 U.S.C.A.

McCay v. CAPITAL RESOURCES COMPANY, LTD. 96-200 S.W.2d 1997

Where appellee apparently never possessed appellants' original note as provided in Ark. Code Ann. 4-3-309(a)(i) (Repl. 1991), but was required, even if it had, to have proven all three factors specified in 4-3-309(a) and did not do so, appellee could not enforce the original note's terms by the use of a copy; even if all three

requirements in 4-3-309(a) had.   been proven..

Mortgage Securities Inc. v. Hartley LORD. No. 4D02-4051. July 23, 2003.

Mortgagee by assignment brought foreclosure action. The Circuit Court, 15th Judicial Circuit, Palm Beach County, Edward Fine and John Wessel, JJ., entered summary judgment for mortgagor. Mortgagee appealed. The District Court of Appeal, Stone, J., held that mortgagee could not maintain cause of action to enforce missing promissory note or foreclose mortgage, in absence of proof that mortgagee or assignor ever had possession of note.

81  FIGUEREDO v. BANK ESPIRITO SANTO No. 88-1808.Jan. 31, 1989. FL Third District. The plaintiff failed to produce for admission into evidence the original copy of a negotiable promissory instrument as is expressly required by section 90.953(1), Florida Statutes (1987). For this reason, the final judgment of foreclosure is vacated with directions for the trial court to receive the original promissory note in evidence

82  **Where the enforcing party cannot prove the existence of the debt, then there is no debt.**

83  **This is established as well under   MD Code 3-302, holder in due course. The only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee." Bankruptcy Courts have followed the Uniform Commercial Code.** *In Re* **Investors & Lenders, Ltd. 165 B.R. 389 (Bkrtcy.D.N.J.1994),**

84  Unequivocally the Court's rule is that in order to prove the "instrument", possession is mandatory.

85  Absent this, **the foreclosing party fails to establish for what actual holder it has the right to do so.**

86  If the foreclosing party cannot produce any competent fact witness **who is** still legal holders of the original, unnegotiated **unconverted**, debt instrument, as the potentially injured party with **personal jurisdiction** and standing to bring this action, which they have not, as a matter of law they cannot be allowed to do so.

87  And again, pursuant to these facts of how notes may be readily transferred and exchanged in the banking industry, Plaintiff will demand the right to have produced for the Court the original Deed of Trust and Promissory Note for examination by the Plaintiff and the Court for evidence of such markings on it or an allonge attached or reduced to computer disc showing what exchange, sale or transfer of the loan has been made by one or more of the holders of these instruments since the making of the loan and who actually is now the present legal and actual holder of this debt with standing to have foreclose performed in its name.

88  **WHEREFORE, PREMISES CONSIDERED, Plaintiff moves the Court for the following relief:**

That Defendant be ordered estopped from foreclosure of said property . the names of any parties who have not demonstrated themselves to be the holder in due course of the rights to enforce this contract.

## X.

## COUNT SEVEN

## BREACH OF CONTRACT- MISREPRESENTATION OF MATERIAL FACT IN DOCUMENTS AND EVENTS OF THE LOAN CLOSING

89  It is Plaintiff, Joellyn Andrews' first hand eyewitness testimony (see Affidavit A attached) she was induced by the lender's closing agents to make express false affirmations in signing the note as written which act to void the note as a falsely represented instrument **induced** of the Plaintiff **for the lender's immediate use to their benefit and interests before** actual consideration was given for them to be legal holders of the note that was not authorized by the agreement, not told to the Plaintiff and not agreed to by him, and all to the unjust benefit of the **Defendant** and their predecessors.

90  Plaintiff has stated as fact, she was either told or given to understand he had to sign the promissory note to pay the money back **and** grant the property to the bank **as collateral** for the loan in order for the bank to pay off the notes to the then current lien holders  and the seller in purchase  of the property. She states, this is what she was told the documents meant **and said** and what was taking place in her signing of them.

91  But an examination of the documents shows there are several false statements in the note that are not true or were not factually true at the time the note was signed and tendered, and inconsistent with what he was given to understand was happening.

92  The note says, **"In return for a loan I have received, I promise to pay….."**
Joellyn Andrews has testified, as fact, **I had not yet received the loan when they asked me to sign this.**
I quote from the affidavit A affirmed,
In this loan transaction that is the subject of this dispute I **first** tendered my signed note to the bank **before** any loan was made by them in my behalf of any loan check or other loan consideration to any parties to the transaction representing pay out by the bank of any loan proceeds, and before any such loan check or other loan consideration had been negotiated by such parties in settlement or recovery from the bank of any loan proceeds. ….. The bank had possession and use of my signed note prior to the making of any loan to me by the bank that is the subject of this dispute.

93  The court may question the materiality of this, but the court knows, laws of contract, property and title are very precise. Every month or so the court hears disputes that turn on one phrase of a contract, or what events preceded what in the land records or in the signing of documents that are of a finer point than this one. This material issue is no different here.

The Court knows, without value or consideration given to gain the note it **is not an enforceable instrument.**

**MD Code 3-303 VALUE AND CONSIDERATION.**

(a) An instrument is issued or transferred **for value if: (1)** the instrument is issued or transferred for a promise of performance, **to the extent the promise has been performed;** If an instrument is issued **for value** as stated in subsection (a), **the instrument is also issued for consideration.**

b) The drawer or maker of an instrument has a defense if the instrument is issued without consideration.

**94  And the fact is,** she has testified he was first asked to sign the note stating that for value she **had already received** she was agreeing to pay it back under the terms of the note when **as yet no loan had been made.**

As stated in his affidavit(see Affidavit A attached):

….when I tendered my signed note to the closing agent their promise of a loan **had not been performed,** no **loan had yet been consummated,** and **no value or consideration had yet been given.**"

The note could have had him make the true affirmation, **" for a loan I am going to receive I promise to pay….",** and **after** the consideration of loan proceeds had been disbursed they could have required her to sign a receipt simply acknowledging the anticipated loan consideration her promise was predicated on had been given and attached that to the note and that would have been legal acknowledgment of the necessary consideration to make the note enforceable. **But they did not do that.**

**95**  The bank could have simply passed out the loan proceeds checks to all parties who were to receive money, and **then** have her sign the note saying **"for a loan I have received I promise to pay…" and this affirmation in the note they had me to make would have been true.** The bank was still protected in this scenario in that if she **might** not sign the note, they could simply tell everyone the closing was off and the checks are voided. **But again, they did not do that.**

**96**  Again, she was first asked to sign the note stating that for value she **had already received** she was agreeing to pay it back under the terms of the note when **as yet no loan had been made.**

As she has affirmed, "…when I tendered my signed note to the closing agent their promise of a loan **had not been performed,** no loan had yet been consummated, and **no value or consideration had yet been given.**"

**97**  Opposing counsel and the Court may argue the closing agent had the bank's loan checks when she came to the closing. But even if that is true, if she had not signed and tendered the note, **she would never have distributed the loan proceeds.**

**98** As stated above the   are innumerable ways the bank could  .ve had her affirm in the note the truth, that she was giving the note **before** she got the loan, and still made it legally enforceable, Or ways they could have conducted the loan closing so that the affirmation she had **already** received value and consideration in return for the note **would have been true. But they did not do these things.**

**99** The **actual reality** of the transaction was, as stated in our affidavit(see Affidavit A attached), **She had to tender my signed note <u>first,</u> before the bank was going to make its loan. Despite** the fact the note has me say, he had **already received** the loan when he tendered her note **when as yet she had not.**

**100** By this the bank induced her to make express, false affirmation **in the note she had received consideration for them to gain the note which** <u>had not happened, and was not true,</u> which **instantly altered** the material value and use of it to the bank to their benefit and interests **<u>without yet having given anything to get it,</u>** as was evidenced **immediately thereafter** when at once they **used it for their purposes and interests, as the only thing tendered to that point** to be consideration to the seller of the property **which was necessary for her clear titled transfer in the deed of trust to be valid to them. They did this before they ever gave anything to get the note, and did it without her knowledge or agreement verbally or in the contract.**

As stated in my affidavit (see Affidavit A attached), .... when I tendered my signed note to the closing agent, **immediately thereafter** they had me avow in the trust deed I signed  I **was, then and there,** the lawfully seized titled owner of the property **with power** to grant good title, when the facts, as stated, are **no loan proceeds** check had been tendered by the bank to other parties to  have satisfied **any liens** against the property,  or to **the seller** as consideration to transfer the property to me. NOTHING had been tendered by **anybody** to **satisfy anything for me to become the lawfully seized owner......EXCEPT** the tender of <u>my signed  promissory note</u>  to the closing agent, acknowledging consideration   when none had been given.

**101** If <u>a legal document</u> has her state as material fact what <u>had not happened</u> or <u>was not true,</u> - that he <u>had received</u> a loan <u>when as yet she had not,</u> - at the time it was signed and tendered <u>for their use,</u> then they have **induced** of her a **falsely represented** instrument, <u>to use</u> for their purposes and interests **without my knowledge or agreement,** which <u>voids</u> the note and this contract was (is) un**enforceable for this reason.**

**102** Opposing counsel may again say this fact is **irrelevant** and **immaterial** since before the day was out or even the loan closing ended loan proceeds checks **were** issued and that it is **not** a material fact affecting the transaction for this reason.

**103** And we would agree; that is the issue here.

104 The only thing the Court must consider is **whether this is material fact of the transaction**, whether they made any use of it **before** the loan was consummated that would **materially affect** the transaction without it, or that they **gained any benefit** from its use to their purposes and interests during this time **before** the loan was finally made.

And the incontrovertible facts of the loan closing show that **they did.**

105 Borrower has testified **they had her tender his signed note acknowledging consideration when none had yet been given.** By this the bank induced her to make **express, false affirmation** in the note she had received consideration for them to gain the note which <u>had not happened, and was not true.</u> Yet she has testified they **immediately used it for their purposes and interests, as the only thing tendered to that point to** have satisfied the seller or **any liens** against the property. This is **evidenced** by the events we have testified, that upon tender of his signed note, **immediately thereafter** they had her avow in the deed of trust she signed she **was, then and there,** the lawfully seized titled owner of the property **without encumbrances** and with **power** to grant good title.

106 This Court knows Consideration to lien holders **had to be present right then in the transaction** for these transfers and releases to be valid making borrower the **unencumbered, titled owner** of the property as **their** Borrower's Covenant in **their** deed of trust has her to say she was, which the document clearly shows, and which she had to be, for **her** granting of the deed of trust to be legally valid. If not the deed of trust he gave is **void** and **meaningless because you can't give to somebody else free and clear what you don't yet legally have free and clear.**

107 Yet at the time this deed of trust was signed by her, as she has affirmed in her affidavit (see Affidavit A attached), **no loan proceeds** check had been tendered by the bank to other parties to have satisfied the seller or **any liens** against the property, ....NOTHING had been tendered **by anybody** to **satisfy anything for her to become the lawfully seized owner without encumbrances......EXCEPT the tender of** <u>her signed promissory note</u> **to the closing agent** acknowledging consideration that had never been given.

108 **The sequence of events she has testified to clearly show,** they have **induced** this <u>falsely represented</u> instrument from her, to stand as **consideration for these transfers and releases** <u>they could have gained no other way except</u> to have **already** given the loan proceeds, **which they had not.** They received immediate **benefit to their interests** <u>using</u> **her** note as consideration to consummate this loan closing, **without yet having given anything to gain the note,** and they did it **without her knowledge or agreement** verbally or in the contract, voiding this contract **from the beginning** and the court should not allow it to be enforced.

**109 Further, as alread, tated, MD Code 3-303 says, under  ,LUE AND CONSIDERATION. (a) An** instrument is **transferred for value if: (1)** the instrument is issued for a promise of performance, **to the extent the promise has been performed;**

And without value or consideration given to gain the note they had **not yet become the equitable holder of it** for them to make **any use of it** for their purposes at the time the note was **obviously** so used as **the only thing tendered to have satisfied** the seller or any liens **against the property** to **validate my clear titled transfer in the deed of trust.**

110 The Court does not need to know **how** the note was somehow used by the bank in this way, to see it was done **before the consummation of a loan had been performed as consideration to him** for them to **gain and so use it,** which is a material breach of contract, voiding it from the beginning and the court should not allow it to be enforced or any sale that may occur from it until these issues are resolved.

111 **Further, if the bank somehow used borrower's note to their benefit or interests without her knowledge or agreement and without yet being the equitable holder to do anything with it, which the sequence and language of the documents clearly show, this is a conversion of the borrower's asset to their unjust enrichment and one which they did not yet have legal hold of the instrument to make for any purposes. And this contract and their rights under it are void for this reason.**
Borrower trusted the bank officers were acting in her behalf as a customer of the bank to gain for her the loan of the bank's own good and valuable consideration they allowed him to believe they would make they and she both wanted to accomplish. They had written the agreement and she believed they would not cause her to make any untrue statements in any of the documents she was signing. She relied on what they said as they told him the purpose of each document they asked her to sign. She had no legal counsel present and they had not advised her that she had need of any. And there was no reason to believe she had need of any since, as a customer of the bank, they were supposed to be acting in **both** their interests to achieve the making of a loan both wanted to see made.

Further, **MD Code 3-305. DEFENSES AND CLAIMS IN RECOUPMENT.**
a)     **Except as stated in subsection (b),** the right to enforce the obligation of a party to pay an instrument is subject to the following:

b)     (1) a defense of the obligor based on …. **(ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor,** (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms,

112 This is exactly the situation we have here. She had no knowledge the note she tendered **for no purpose but security**, was somehow to be used by the bank to their benefit and interests, as the only thing tendered **to have satisfied** consideration to the seller and any liens **against the property to validate our clear titled transfer in the deed of trust** as the events of the closing show it was.

And by statutory law, **they no longer have the right to enforce the obligation on her to pay this** <u>instrument</u>.

b) **The right of a** <u>holder in due course</u> **to enforce the obligation of a** <u>party</u> **to pay the** <u>instrument</u> **is subject to defenses of the obligor** **stated in subsection (a)(1),**

Case law precedent as well, supports all these claims as a basis for relief:

Misrepresentations involving the nature and effects of the instruments signed amounted to fraud in the factum and could be asserted against assignee of the instruments regardless of whether it was a holder in due course. American Plan Corp. v Woods, 16 Ohio App2d 1, 240 NE2d 886 (1968)

"It is not necessary for rescission of a contract that the party making the misrepresentation should have known that it was false, but recovery is allowed even though misrepresentation is innocently made, because it would be unjust to allow one who made false representations, even innocently, to retain the fruits of a bargain induced by such representations." <u>Whipp v. Iverson</u>, 43 Wis 2d 166.

**Untrue statements amount to constructive fraud.** Thompson V. Houston, 135 P2d 834; 17 Wash 457

113 Plaintiff did not discover these misrepresentations and failures of disclosure of these material facts perpetrated upon them by the Defendant and its predecessors until March 2009. Yet the actions occurred in the beginning by Defendant's predecessor for whom they are responsible for predecessor's actions in the contract.

114 Defendant's failure to make these material disclosures was false, misleading, or made recklessly, without care of the true facts and with callous disregard for the rights of the Plaintiff.

115 As a proximate result of these withholdings of material fact and failures of disclosure and borrower's justifiable reliance upon same, the contract has been breached and the Plaintiff has been damaged by denying her the right to full disclosure of these material facts of the contract by which she would have known of these unconscionable inequities and would have had the cause, incentive and opportunity to have sought to negotiate more favorable terms of the contract with the lender or to reject the terms as written altogether.

116 **Further, Plaintiff has relied on these misrepresentations to their unconscionable disadvantage and abuse as set forth herein they have unknowingly suffered since the beginning of the contract under the terms as written as further damage to the Plaintiff.**

117 And as there can be no legal default by Plaintiff under a contract that has been breached and voided by the actions of the Defendant or its predecessor from the beginning. Further, there has been no equitable

cause to hold Plaintiff's prope.    as collateral security under a void co _ract, nor to foreclose and seize it from her and she will be damaged and made to suffer loss thereby in the amount of the market value of the property at the time of the spurious sale. Defendant is estopped from its enforcement of such an invalid and breached contract. And as a consequence thereof, any funds owed by the Plaintiff are not recoverable against her under a void contract and any loss or consequences for the money are damages to the bank for its actions;

and **if the subject property has been sold to a third party by the time these issues are adjudicated by the Court and order the Defendant to pay damages to the Plaintiff for its breaches of contract in amount of $418,980..**

118 The note further states, '....a deed of trust.... **dated the same date as this note** <u>protects</u> (present tense) **the note holder from possible losses...'** when, as she has stated, in actual fact, at signing of this note, no deed of trust had been **presented** to her, and no deed of trust had been **signed** and granted by her, and **did not exist.**

119 The Court may note, this sentence referencing the deed of trust makes **no commitment** or **obligation** on the borrower to grant such a security instrument as part of the note agreement, but is merely a **false statement** that the deed of trust has **already** been granted and exists, **when it did not.**

120 The note could have said, 'a deed of trust <u>will be</u> signed by the borrower to <u>**protect**</u> **the note holder from possible losses...' or "borrower agrees to grant a security interest in real property to protect the note holder from possible losses...'** or any number of things that would have bound the maker of the note <u>to grant the deed of trust to the lender.</u>

121 <u>**But, as is borrower's testimony by sworn affidavit, the note they had her sign never obligates her or has her agreeing to do this,**</u> and, as the Court can see, constitutes **no agreement** by the maker of the note to **a future** granting of such a security instrument. But is simply a **false inference** a security instrument securing the note **has already been given.**

## MEMORANDUM OF LAW

122 Further it is a well-known canon of contract construction that ambiguities in a contract are to be construed **against the party who drafted said contract**. Pursue Energy Corp. v. Perkins, 558 So.2d 349 (Miss. 1990).

123 The primary purpose of all contract construction principles and methods is to determine and record the intent of the contracting parties. Kight v. Sheppard Bldg. Supply, Inc., 537 So. 2d 1355, 1358 (Miss. 1989).

124 First, the "four corr. ͻ" test is applied, wherein the review. ͻ court looks to **the language that the parties used in expressing their agreement.** Id. at 352 (citing Pfisterer v. Noble, 320 So. 2d 383, 384 (Miss. 1975))

125 If the language used in the contract is clear and unambiguous; the intent of the contract must be realized. Legal purpose or intent should first be sought **in an <u>objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence.</u>** City of Grenada v. Whitten Aviation, Inc, 755 So. 2d 1208, 1214 (Miss. Ct. App. 1999) (citing Cooper v. Crabb, 587 So. 2d 236, 241 (Miss. 1991)). **Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue.** Id. (citing Cooper, 587 So. 2d at 241).

126 And this sentence referencing the deed of trust makes **no commitment** or **obligation** on the borrower to grant such a security instrument a part of the note agreement. This is **not a conditional statement** as requirement to receive the loan **or even acknowledgment of an obligation** to grant the deed of trust, this is merely a statement, and even one which may not yet be true, the borrower has given or is giving the property over to the lender to secure his interests.

127 **And in The "four corners" test, the courts are not at liberty to infer intent any more than this from the text at issue. As ...."** in an <u>**objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence.**</u>"

128 She was told the contract said she had to grant the deed of trust to get the loan, and by this representation was given to believe that somewhere in the documents she was signing, it **said** that. This statement **reinforces** that representation and **implies** or has the borrower to **assume** that **somewhere else** she has agreed to grant the deed of trust as a condition to get the loan. But this is **<u>not that</u>** agreement, or the acceptance of **<u>that obligation</u>**.

129 **And, again, in the "four corners" test, the courts are not at liberty to infer intent contrary to that emanating from the text at issue.** We would ask the Court, **where <u>is</u> the obligation** or **requirement on the borrower to grant a security interest stated <u>in the text</u>** as a condition to receive the loan? Where is her **agreement** to grant a security interest as a condition to receive the loan **stated <u>in the text</u>**?

130 This is the primary reference in the note to the deed of trust. And if the intent here on part of the instrument may seem ambiguous, **"ambiguities in a contract are to be construed against the party who drafted the contract"**... <u>Pursue Energy Corp. v. Perkins,</u> (Miss. 1990).

131 Nowhere in the note is the performance of the bank to make the loan conditional on the borrower's granting of security interest in the property being financed. The note's only references to the deed of trust are to a document that protects the lender's interest that **has not yet been granted and does not** exist at the signing

of the note, and in the languag    f the note has the appearance and ur. .rstanding of a purely **voluntary act** on the part of the maker of the note and is **not** stated as a condition of or a part of the promise and obligation on the maker for the lender's performance of the loan. **And again in the "four corners" test, the courts are not at liberty to infer intent any more than this from the text at issue.**

**132 Let the Court search, the fact is the granting of the deed of trust <u>was not</u>** an obligation or condition on the borrower in the written contract **to get the loan. There is** no written obligation **in the note or deed of trust** binding her **to grant it, as a condition to get a loan OR remove the liens on the property. The court can not find one supported by the "four corners of the document", doctrine.**

**133** Plaintiff simply affirms what is fact: the note <u>they had the borrower sign, or any other documents of the agreement never obligates him or has him agreeing to give the property to the lender in trust or otherwise.</u> This is determined by examination of the document itself.

**134** As stated in our affidavit(see Affidavit A attached):

Plaintiff affirms again, no where in the note or deed of trust she signed is **the granting of this security interest** stated as a condition, or a part of the promise and obligation on me or as consideration for the lender's performance of the loan, **and no such loan is stated in the deed of trust as consideration for me to make such conveyance of the property back to them.**

**135** The documents state **there are no verbal or unwritten provisions to this loan contract but that what is written constitutes the entire agreement,** and none of the loan documents contain any <u>**obligation or has any agreement for borrower to give the property to the lender in trust or otherwise once he had become the lawfully seized unencumbered owner of it,**</u> as the deed of trust says she had become.

**136** The Affidavit continues(see Affidavit A attached):

Plaintiff states again, I was either told or given to understand the contract said I had to grant the property to the bank **as collateral** for them to make the  loan,  and by this representation was given to believe that somewhere in the documents I was signing, it **said** to the effect I had to  grant the trust deed for them to make the  loan.
These statements in the note referencing the trust deed, and these statements in the trust deed  identifying the debt or note and  other things the security instrument is given to secure and that the grantor is granting it for that purpose, reinforce this representation and **implies**  or has the borrower to **assume** that somewhere else he has agreed to grant the trust deed as a condition to get the loan.  But these statements in the note and trust deed are **not** that agreement, or the acceptance of <u>**that obligation**</u>.

Plaintiff affirms again, no where in the note or trust deed I signed is **the granting of this  security  interest** stated as a condition, or a part of the promise and obligation on me or as consideration  for the lender's performance of the loan, **and no such loan is stated in the trust deed as consideration for me to make such conveyance of the property back to them.**

These representations made , the bank that the contract said I had ɔ grant the property to the bank **as collateral** for them to make the loan were false and misleading on the face of the documents the bank had written for me to sign and affirm. I did not know these representations to be false at the time. Plaintiff believed somewhere in the loan documents she was **agreeing** or **promising** to grant the bank a lien as a **condition** of them making the loan. which is what she was given to understand by the bank's closing agents.

By these false representations, the bank has **deceived me** to believe I had to give them a lien on the property as a condition to receive the loan when, in the written note and trust deed itself, I had made no such agreement or accepted no such obligation, yet I had relied upon the bank's closing agents' representations and these misleading or false statements and implications in the note and trust deed to that effect in my granting the property to the bank in trust **as collateral** supposedly as a requirement upon me **in the written contract** as a condition for them to make the loan.

### Again, MD Code 3-305. DEFENSES AND CLAIMS IN RECOUPMENT.

(c)     **Except as stated in subsection (b),** the right to enforce the obligation of a <u>party</u> to pay an <u>instrument</u> is subject to the following:

(d)     (1) a defense of the obligor based on .... **(ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, <u>nullifies the obligation of the obligor,</u>** (iii) fraud that induced the obligor to sign the <u>instrument</u> with <u>neither knowledge nor reasonable opportunity to learn of its character</u> or its essential terms,

b) **The right of a** <u>holder in due course</u> **to enforce the obligation of a** <u>party</u> **to pay the** <u>instrument</u> **is <u>subject to defenses of the obligor</u> stated in subsection (a)(1),**

Case law precedent as well, supports both these claims as a basis for relief:

Any false representation of material facts made with knowledge of falsity and with intent that it shall be acted on by another in entering into contract, and which is so acted upon, constitutes 'fraud,' and entitles party deceived to avoid contract or recover damages." <u>Barnsdall Refining Corn. v. Birnam Wood Oil Co.</u> 92 F 26 817.
"Any conduct capable of being turned into a statement of fact is representation. There is no distinction between misrepresentations effected by words and misrepresentations effected by other acts." <u>Leonard v. Springer</u> 197 Ill 532. 64 NE 301.

"It is not necessary for rescission of a contract that the party making the misrepresentation should have known that it was false, but recovery is allowed even though misrepresentation is innocently made, because it would be unjust to allow one who made false representations, even innocently, to retain the fruits of a bargain induced by such representations." <u>Whipp v. Iverson</u>, 43 Wis 2d 166.

Untrue statements amount to constructive fraud. **Thompson V. Houston, 135 P2d 834; 17 Wash**

137 The **representations of the bank's closing agents affirmed by the borrower in sworn affidavit**(see Affidavit A attached), **and the face of the note itself are prima facie evidence the bank has** deceived him **to believe the contracts he was signing obligate him to grant a security interest in the property to receive the loan,** which was not an obligations on him in the actual written contract. **They have** induced him **to agree to and accept this misrepresentation of the bank to their unjust** enrichment at his

expense, **and gain of our prc͏̵ rty** which by their own contract they ͏̵ ͏̵e no right to, and for such cause, the note and this loan contract are void and any rights granted to the holder of the note under it.

138 And by so doing, **Defendant and Defendant's Agents may have committed forgery on the Plaintiff** in the transactions as attested by these citations of which Plaintiff affirms firsthand knowledge:

Forgery is an attempt to defraud a person of his property, whether real **or personal,** by the making of **a false and fraudulent written instrument of title, or a false evidence of indebtedness and the like.** State v. McCray, 176 P. 418, 420, 15 Okl.Cr. 316
Forgery is **the falsely making** or materially altering, with intent to defraud, and writing, **which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability,** or the fraudulent making or alteration of a writing **to the prejudice of another man's rights.** Parrish v. Hewitt, 18 S.E.2d 141, 142, 220 N.C. 708

139 Plaintiffs did not discover these misrepresentations and failures of disclosure of these material facts perpetrated upon them by the Defendant until March 2009. Yet the actions occurred in the beginning by Defendant.

140 Defendant's failure to make these material disclosures was false, misleading, or made recklessly, without care of the true facts and with callous disregard for the rights of the Plaintiff.

141 As a proximate result of these withholdings of material fact and failures of disclosure and borrower's justifiable reliance upon same, the contract has been breached and the Plaintiff has been damaged by denying him the right to full disclosure of these material facts of the contract by which he would have known of these unconscionable inequities and would have had the cause, incentive and opportunity to have sought to negotiate more favorable terms of the contract with the lender or to reject the terms as written altogether.

142 Further, Plaintiff has relied on these misrepresentations to their unconscionable disadvantage and abuse as set forth herein they have unknowingly suffered since the beginning of the contract under the terms as written as further damage to the Plaintiff.

143 And as there can be no legal default by Plaintiff under a contract that has been breached and voided by the actions of the Defendant or its predecessor from the beginning. Further, there has been no equitable cause to hold Plaintiff's property as collateral security under a void contract, nor to foreclose and seize it from him and he will be damaged and made to suffer loss thereby in the amount of the market value of the property at the time of the spurious sale. Defendant is estopped from its enforcement of such an invalid and breached contract. And as a consequence thereof, Any funds owed by the Plaintiff are not recoverable against him under a void contract and any loss or consequences for the money are damages to the bank for its actions, and **if the**

subject property has been s    to a third party by the time these h    es are adjudicated by the Court and order the Defendant to pay damages to the Plaintiff for its breaches of contract in amount of $418,980.

144 Further, it is borrower's first hand eyewitness testimony and as evidenced by Borrower's Covenants in the deed of trust she signed, she was <u>deceived</u> by Defendant's Agents and <u>induced</u> to convey the property in trust to Defendant  as consideration to pay off the seller and make her the owner of the property when the deed of trust states she was already **then** at its signing, the fully and lawfully seized unencumbered owner of the property **with no written contractual obligations to convey it to anyone.**

In examination it will be seen the deed of trust recites what the instrument secures in the interests of **the lender,** but as one can see, it serves **no purpose** to the interests or benefit of the grantor, and there is **no reason or purpose** cited serving **his interests** for him to grant it, nor is any obligation **claimed** in any other documents cited **requiring** him to grant it.

145 According to the deed of trust, the only thing the grantor gets for his property is the **supposed** satisfaction to her of having secured the **bank's** interests. In keeping with the **actual** terms of the note, which **does not** condition the performance of a loan by the lender to be in return for the granting of a security interest in the property, accordingly, the deed of trust makes **no mention of a loan as consideration,** or any other good and valuable consideration in return for conveyance of the property.

**MD Code  3-303 VALUE AND CONSIDERATION.**

(a) An <u>instrument</u> is <u>issued</u> or transferred **for value if: (1)** the <u>instrument</u> is <u>issued</u> or transferred for a <u>promise</u> of performance, <u>**to the extent the promise has been performed;**</u> If an instrument is issued **for value** as stated in subsection (a), **the instrument is also issued for consideration.**

146 The Court **knows** without value or consideration given in return for conveyance of the property, **no legally valid, enforceable transfer of title has been made by the granting of the deed of trust.**

147 Legal documents that are **the actual legal representation** of a loan cannot say anything they want to and then the court be asked to enforce instead a **supposed** colloquial general understanding of what the legal documents were **supposed to mean.** The court knows if the bank's loan to pay the seller for him to become owner on the property was **legally to be consideration** for borrower to give it away in trust to them **the deed of trust would have to say so.**

148 The four corners of the document: the courts are not at liberty to infer intent contrary to that emanating from the text at issue. And if it doesn't say it <u>in writing,</u> that is legally not what the obligation is.

149 But as stated, the deed of trust makes no mention of the loan or any other good and valuable consideration given in return for conveyance of the property.

150 The Court may cite the paragraph that precedes the statement of conveyance identifying the debt or note and other things this security instrument is given to secure and that the grantor is granting it for that purpose.

151 But **the granting of this security interest** is <u>not</u> here stated as **a condition,** or a part of the promise and **obligation** on borrower **or as consideration** for the lender's performance of the loan.

152 This is **only** a statement the grantor is giving the property over to the lender to secure his interests.

153 Borrower has stated as fact in her affidavit (see Affidavit A attached), she was told or given to understand by the bank's closing agents the contract said she had to grant the deed of trust to the lender as consideration or in return as condition to receive the loan and by this representation was given to believe that somewhere in the documents she was signing, it **said** to the effect she had to grant the deed of trust as a condition to get the loan.

154 This paragraph identifying the debt or note and other things this security instrument is given to secure and that the grantor is granting it for that purpose, again, **reinforces** that representation and **implies** or has the borrower to **assume** that somewhere else she has agreed to grant the deed of trust as a condition to get the loan. But again, this is <u>not</u> that agreement, or the acceptance of <u>**that obligation**</u>.

155 As in the "four corners" test, the courts are not at liberty to infer intent contrary to that emanating from the text at issue. …." in an <u>objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence</u>."

156 We would ask the Court, again, **where** <u>is</u> **the granting of this security interest** stated <u>**in the text**</u> of this paragraph as **a condition,** or a part of the promise and **obligation** on the borrower **or as consideration** for him to receive the loan?

157 Where is her **agreement** to grant this security interest as a condition to receive the loan **stated** <u>**in the text**</u> of this paragraph?

Clearly what the deed of trust states as the reasons or purpose for granting it is <u>not consideration to her</u> in return for conveyance of the property to the bank.

158 And yet nowhere in the note or deed of trust is **the granting of this security interest** stated as **a condition,** or a part of the promise and **obligation** on him **or as consideration** for the lender's performance of the loan.

159 **Again, in the "four corners" test,** the courts are not at liberty to infer intent contrary to that emanating from the text at issue.

160 And, **if the granting of this security interest** is **not** stated elsewhere **in the text** of the loan documents **as a condition,** or a **part of the promise and obligation** on him or **as consideration** for the lender's performance of the loan, **which it is not,**

and no such loan is stated in the deed of trust **as consideration** for him to make the conveyance, **then the court is not at liberty to infer intent contrary to this and the point of law is established, the loan was not consideration for granting of the deed of trust or,** conditioned on the granting of the deed of trust.

161 Further, the deed of trust makes no mention of the loan or <u>any other good and valuable consideration</u> given in return for conveyance of the property to the lender.

162 And without question such an exchange is by definition an "unconscionable bargain" only a deceived or deranged persons would make if he had no contractual obligation back to the seller to grant it, which by "the Four Corners of the document", he does not,

and **therefore is an invalid conveyance for this cause.**

From <u>Black's Law Dictionary</u>, 6th Edition, p 1525:

**<u>Unconscionable bargain</u> _or_ <u>contract</u>.** A contract, or a clause in a contract, that is so grossly unfair to one of the parties because of stronger bargaining powers of the other party, usually held to be void as against public policy. **An unconscionable bargain or contract is one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept on the other.** <u>Hume</u> v. <u>U.S.</u>, 132 U.S. 406, 10 S. Ct. 134, 33 L. Ed. 393." [emphasis added]

163 **The deed of trust, which is the actual legal representation of this transfer, has her giving away what it says is her property free and clear, not in exchange for the valuable consideration of receiving the loan, as she was given to understand, but essentially for absolutely nothing except borrower's satisfaction their interests are secured; for no consideration listed of any kind of value, not the loan or anything else, ... no consideration or benefit gained for him to do so, and there is no written contractual obligation anywhere for her to give it away.**

**164** Again **MD Code 3-   3 VALUE AND CONSIDERATION** "T   drawer or maker of an instrument has a defense if the instrument is issued without consideration."

**MD Code -3-305. DEFENSES AND CLAIMS IN RECOUPMENT.**

(e)      **Except as stated in subsection (b),** the right to enforce the obligation of a party to pay an instrument is subject to the following:

(f)      (1) a defense of the obligor based on .... (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms,

(g)      b) The right of a holder in due course to enforce the obligation of a party to pay the instrument is subject to defenses of the obligor stated in subsection (a)(1),

**165 The Court knows** without **written contractual obligation to grant the deed of trust or equitable value or consideration given In return for the granting of it**, both of which are clearly absent on Its face, no legally valid, enforceable transfer of title has been made by borrower in the granting of the deed of trust, And for this or any of these causes this deed of trust Is void, and was not and Is not enforceable and no foreclosure under It will be valid.

**166** Case law precedent as well, supports both these claims as a basis for relief:

Any false representation of material facts made with knowledge of falsity and with intent that it shall be acted on by another in entering into contract, and which is so acted upon, constitutes 'fraud,' and entitles party deceived to avoid contract or recover damages." Barnsdall Refining Corn. v. Birnam Wood Oil Co. 92 F 26 817.
"Any conduct capable of being turned into a statement of fact is representation. There is no distinction between misrepresentations effected by words and misrepresentations effected by other acts." Leonard v. Springer 197 Ill 532. 64 NE 301.

"It is not necessary for rescission of a contract that the party making the misrepresentation should have known that it was false, but recovery is allowed even though misrepresentation is innocently made, because it would be unjust to allow one who made false representations, even innocently, to retain the fruits of a bargain induced by such representations." Whipp v. Iverson, 43 Wis 2d 166.

**167** Untrue statements amount to constructive fraud. **Thompson V. Houston, 135 P2d 834; 17 Wash**

**168 Again,** without **written contractual obligation to grant the deed of trust or equitable value or consideration given In return for the granting of it**, both of which are clearly absent on its face, no legally valid, enforceable transfer of title has been made by borrower in the granting of the deed of trust, and for this or any of these causes this deed of trust is void, and was not and is not enforceable and no foreclosure under it will be valid.

169 Further, the BORROWER COVENANT states "BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record."

170 In hindsight the question arises, **When and how did the borrower get that way?** The fact affirmed by the borrower is they never told her this had happened before the loan closing was finished verbally or in writing.

171 And If she **was** lawfully seized of the estate **and** had **the right** to grant and convey the Property **unencumbered,** And if she had **no contractual obligation** to convey it to them to secure their interest, the facts are that means **at that time,** however she got that way, she had **no obligations** to **anyone** to do **anything** with it if she didn't choose to, **when they induced him to sign this deed of trust granting it to them. Again, the "four corners" test, states** the courts are not at liberty to infer intent contrary to that emanating from the text at issue. **If It doesn't say it In writing, that's legally not what the obligation is.**

And **the fact** is, she had no such obligation in the text of this contract **when they induced her to sign this deed of trust granting it to them.**

172 Borrower has sworn in my affidavit(see Affidavit A attached):
But the bank and its closing agents asked me to sign the trust deed upon their representation and/ or implication to me, the borrower, I had to make such conveyance to receive a supposed necessary 'loan' from the bank to purchase the property **to become the** lawfully seized  titled owner. I signed the trust deed conveying title to the subject property in trust to the bank for no other purpose than that stated: **to get the loan to become the lawfully seized  titled owner,** and made such conveyance under no other stated, implied, or written obligations to do so.

173 But as further stated in our affidavit(see Affidavit A attached),

The deed of trust the bank presented to me to sign and grant provided for me to avow that I was, at the time of signing the same **already then** the lawfully seized titled owner of the property **without encumbrances on the property to my power to grant good title** stating, **"BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.",...,** when no loan had yet been consummated and again, the deed of trust makes **no mention of a loan as consideration,** or any other good and valuable consideration in return for the property.

174 The facts are, as stated in her affidavit (see Affidavit A attached), she was **deceived** by the bank and its closing agents and **induced** and **persuaded** to make this conveyance to the bank **under coercion** she had to, **to get the loan** pay the seller for her to become the owner of the property when no where in the note or other loan documents is the performance of the bank to make the loan conditional on the borrower's granting the bank

else, <u>no consideration or be, it gained for her to do so</u>, when in act, there is <u>no written contractual</u> <u>obligation anywhere in the loan instruments</u> for him <u>to convey it to anyone</u> and to put her at risk for the loss of what <u>was already</u> her property, according to <u>their</u> documents, when they deceived her into granting it to them.

181 Again, nowhere in the note is **the granting of this security interest** stated as a condition, or a part of the promise and obligation on her or as consideration for the lender's performance of the loan, **and no such loan is stated in the deed of trust as consideration for her to make such conveyance of the property back to them.**

182 No rational person would grant a lien to property she is **already** the lawfully, unencumbered holder of and indenture himself in contract **by choice**, with the possibility of having his property taken from her, **when she had no legal obligation to do so, unless** she **was** being deceived,

183 And it is an "unconscionable bargain", <u>Hume v. U.S.</u>, 132 U.S. 406, 10 S. Ct. 134, 33 L. Ed. 393.

As stated in borrower's affidavit(see Affidavit A attached)
These representations made by the bank that I had to convey the property to them in the trust deed to get a necessary loan from the bank to pay the seller of the property , or that I had to convey the property to them in the trust deed  to become the lawfully seized titled owner of it were false and  misleading on the face  of the document the bank  had written for me to sign and affirm.  I did not know these representations to be false.

184 She trusted the bank officers were acting in good faith to gain for him the payoff of the then present lien holder which was his purpose at the transaction. They had written the agreement and he believed they would not cause her to make any fraudulent or untrue statements in any of the documents she was signing. She relied on what they said as they told her the purpose of each document they asked her to sign.

185 By these false and fraudulent representations, the bank has induced and coerced her to enter into the said contract granting the property back to them in the deed of trust when she had **no written contractual obligation to do so** and yet had relied upon the bank's closing agents' representations in so doing.

186 Plaintiff again, would show unto the Court case law is replete with citations establishing the parameters of fraud under these causes:
Party having superior knowledge who takes advantage of another's ignorance of the law to deceive him by studied concealment or misrepresentation can be held responsible for that conduct. *Fina Supply, Inc. v. Abilene Nat. Bank*, 726 S.W.2d 537, 1987.

Knowing failure to disclose material information necessary to prevent statement from being misleading, or making representation despite knowledge that it has no reasonable basis in fact, are actionable as fraud under law. *Rubinstein v. Collins*, 20 F.3d 160, 1990.

Party in interest may become ...le for fraud by mere silent acquiesc...ce and partaking of benefits of fraud. *Bransom v. Standard Hardware, Inc.*, 874 S.W.2d 919, 1994.

When circumstances impose duty to speak and one deliberately remains silent, silence is equivalent to false representation. *Fisher Controls International, Inc. v. Gibbons*, 911 S.W. 2d 135, 1995.

When a person sustains to another a position of trust and confidence, his failure to disclose facts that he has a duty to disclose is as much a fraud as an actual misrepresentation. *Blanton v. Sherman Compress Co.*, 256 S.W. 2d 884, 1953.

"Any false representation of material facts made with knowledge of falsity and with intent that it shall be acted on by another in entering into contract, and which is so acted upon, constitutes 'fraud,' and entitles party deceived to avoid contract or recover damages." Barnsdall Refining Corn. v. Birnam Wood Oil Co. 92 F 26 817.

"Any conduct capable of being turned into a statement of fact is representation. There is no distinction between misrepresentations effected by words and misrepresentations effected by other acts." Leonard v. Springer 197 Ill 532. 64 NE 301.

"It is not necessary for rescission of a contract that the party making the misrepresentation should have known that it was false, but recovery is allowed even though misrepresentation is innocently made, because it would be unjust to allow one who made false representations, even innocently, to retain the fruits of a bargain induced by such representations." Whipp v. Iverson, 43 Wis 2d 166.

Contract can be avoided if it was induced by fraud, duress or misrepresentation. Goldman v. Bequai, 19F3d 666 (DC Cir. 1994).

**Untrue statements amount to constructive fraud.** Thompson V. Houston, 135 P2d 834; 17 Wash 457

187 And by so doing Defendant and Defendant's Agents may have committed forgery on the borrower in the transaction as attested by the following references of which Plaintiff affirms firsthand knowledge:

Forgery is **an attempt to defraud a person of his property**, whether real or personal, **by the making of a false** and fraudulent written instrument of title, or **a false evidence of indebtedness and the like.** State v. McCray, 176 P. 418, 420, 15 Okl.Cr. 316
Forgery is **the falsely making** or materially altering, **with intent to defraud, and writing, which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability,** or **the fraudulent making** or alteration **of a writing to the prejudice of another man's rights.** Parrish v. Hewitt, 18 S.E.2d 141, 142, 220 N.C. 708"

188 And for this or any of these causes this deed of trust is void, and was not and is not enforceable and no foreclosure under it will <u>be</u> valid.

189 The agreement is not what the bank <u>told the borrower.</u> It is what the documents <u>say.</u>

190 In <u>the "four corners" test,</u> the courts are not at liberty to infer intent contrary to that emanating from the text at issue, and if it doesn't say it <u>in writing</u>, that's legally not what happened or what the obligation is.

191 **As** already stated, tl  epresentations of the bank's closing  ..nts and the events of the loan closing as stated in Plaintiff's affidavit(see Affidavit A attached), and the face of the loan documents themselves are prima facie evidence The bank has **deceived the borrower** to believe the contracts she was signing **obligated her** to grant a security interest in the property to receive the loan to purchase the property **when nowhere is this an obligation on her in the actual written contract**. And the deed of trust they presented her to sign said **he was, already, then, the fully and lawfully seized unencumbered owner of the property when they had her signing it over to them, when no loan had been consummated, and no such loan is even stated in the deed of trust as consideration for her to give it away.**

192 They deceived her into **giving away** what their own deed of trust says was clearly and legally then **her property over to them in** return **for absolutely nothing,** except her satisfaction their interests are secured, **no consideration or benefit gained for ourselves to do so,** and there is **no written contractual obligation anywhere for her to give it away.**

193 **They have** induced the borrower **to agree to and accept these misrepresentations of the bank** to their unjust enrichment and gain of his property, which by their own contract they have no right to. **And for this or any of these causes this deed of trust is void, and was not and is not enforceable and no foreclosure under it will be valid.**

194 Further, as we have shown, the bank induced the borrower to make **express false affirmation** in the note as Material fact he had received consideration for them to gain the note which **had not happened, and was not true.**

195 In having her tender her signed note acknowledging consideration **when none had been given** they have **induced** of him **a falsely represented instrument**, which they **immediately** used for their purposes and interests, as **the only thing tendered to have satisfied** the seller and any liens **against the property validating her clear titled transfer in the deed of trust, as the events of the closing show it was, before** they ever gave anything to get it, and without her knowledge, or consent. Which voids the note and this contract is unenforceable for this reason.

196 Yet, the face of the deed of trust itself is enough to void the instrument and any sale based on it. Without **written contractual obligation to grant the deed of trust or equitable value or consideration given in return for the granting of it**, both of which are clearly absent on its face, no legally valid, enforceable transfer of title has been made by borrower in the granting of the deed of trust, and it was not enforceable for that reason and any sale under it is void.

197 Again, Plaintiff did r.  discover these misrepresentations ar.  ailures of disclosure of these material facts perpetrated upon them by the Defendant and its predecessors until March 2009. Yet the actions occurred in the beginning by Defendant.

198 Defendant's failure to make these material disclosures was false, misleading, or made recklessly, without care of the true facts and with callous disregard for the rights of the Plaintiffs.

199 As a proximate result of these withholdings of material fact and failures of disclosure and borrower's justifiable reliance upon same, the contract has been breached and the Plaintiff has been damaged by denying her the right to full disclosure of these material facts of the contract by which she would have known of these unconscionable inequities and would have had the cause, incentive and opportunity to have sought to negotiate more favorable terms of the contract with the lender or to reject the terms as written altogether. Further, Plaintiff has relied on these misrepresentations to their unconscionable disadvantage and abuse as set forth herein they have unknowingly suffered since the beginning of the contract under the terms as written as further damage to the Plaintiff.

200 And as there can be no legal default by Plaintiff under a contract that has been breached and voided by the actions of the Defendant or its predecessor from the beginning. Further, there has been no equitable cause to hold Plaintiff's property as collateral security under a void contract, nor to foreclose and seize it from her and she will be damaged and made to suffer loss thereby in the amount of the market value of the property at the time of the spurious sale. Defendant is estopped from its enforcement of such an invalid and breached contract. And as a consequence thereof, any funds owed by the Plaintiff are not recoverable against her under a void contract and any loss or consequences for the money are damages to the bank for its actions;

and if the subject property has been sold to a third party by the time these issues are adjudicated by the Court and order the Defendant to pay damages to the Plaintiff for its breaches of contract in amount of $418,980

**Plaintiff moves the Court that it be so ordered**

XI.

COUNT EIGHT

BREACH OF SUPPLEMENT PROVISIONS OF A CONTRACT IN LAW- (WITHOLDING OF MATERIAL FACT)

201 Under the MD Code 1-103 **as well as other common law, unless specifically waived by the parties to an agreement, the principles of law and equity: including the law merchant and the law relative to capacity to contract, principle and agent, estoppel, fraud, misrepresentation (including the exclusion of material facts), duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall**

supplement the provisions o    contract. As affirmed by first hand    .fidavit of Plaintiff, affidavit FI WMF, herein attached, these principles of law and equity were not waived by the Plaintiff, and as they may be shown to apply in this case by evidence produced in discovery and at or prior to trial in hearing by facts to be determined in oral examination and declarations on the record, the Defendant is barred from bringing this foreclosure action and it should be denied.

202 More specifically, but not limited to such causes, Plaintiff would show unto the Court as cited from his Affidavit of first hand knowledge of this contract (Affidavit FI WMF), identified above:

203 Affiant affirmed and sited the following state law applicable to all contracts.

**MD Code 1-103**
"Unless specifically waived by the parties to an agreement, the principles of law and equity: including the law merchant and the law relative to capacity to contract, principle and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement the provisions of a contract.

**Again Affiant affirmed these principles of law and equity were not waived by the Plaintiff in the making of this contract.**

**MD Code 3-305.** DEFENSES AND CLAIMS IN RECOUPMENT.
Except as stated in subsection (b), **the right to enforce the obligation of a <u>party</u> to pay an <u>instrument</u> is subject to the following:**
**(a)** (1) a defense of the obligor based on .... **(ii) duress, <u>lack of legal capacity</u>, or** illegality of the transaction which, under other law, <u>nullifies the obligation of the obligor</u>, (iii) **fraud that induced the obligor to sign the <u>instrument</u> with <u>neither</u> knowledge nor reasonable opportunity to learn of its character or its essential terms,**

**b) The right of a <u>holder in due course</u> to enforce the obligation of a <u>party</u> to pay the <u>instrument</u> is <u>subject to defenses of the obligor</u> stated in subsection (a)(1),**

204 Affiant affirmed at the time this contract was signed by her, she did not know and it was not disclosed to her by the closing agents acting in behalf of the original lender, for whose actions in the contract Defendant is responsible to the Plaintiff in their enforcement of the contract against her, that her hand and signature was to represent the willful act and deed **of or for any other** legal entity than **herself, Joellyn Andrews, a sovereign flesh and blood woman,** and that his name spelled in ALL CAPITAL letters in the contract represented another artificial corporate person, juristic entity or vessel of legal fiction of that name legally identified in that way, **not herself,** of the state's creation to be a vessel in commerce under the International Law Merchant and maritime law of corporate and/or administrative jurisdictions over such federally enfranchised corporate persons and vessels of legal fiction that is something other than a jurisdiction in and on Maryland, the state of the Republic, that was not to be subject to, or governed under that civil common law **directly limiting and affecting, without his knowledge or consent, the constitutional and unalienable rights of the Plaintiff in the contract under**

that civil common law over ᵕ land, on Maryland, , the state of t⸍ ⁄Republic, and the protection of his rights, standing and ability to make defenses against the contact should he have need to do so.

205 Affiant again affirmed the existence of such an artificial corporate person, juristic entity or vessel of legal fiction was unknown and undisclosed to the Affiant by the closing agents acting in behalf of the original lender, for whose actions in the contract Defendant is responsible to the Plaintiff in their enforcement of the contract against her; such was unknown to her prior to his signing of this contract.

206 And Affiant affirmed she did not know, and it was not disclosed to her, by the closing agents acting in behalf of the original lender, for whose actions in the contract Defendant is responsible to the Plaintiff in their enforcement of the contract against her that Affiant was to be construed by her signing of the contract as acting as **fiduciary agent for such non-real artificial juristic entity or person of her name in ALL CAPITAL letters** who was being identified in the contract as the actual borrower and legal party to the contract rather than the Affiant **herself, a sovereign flesh and blood woman,** denying to the Affiant , again **without her knowledge or consent,** her full rights as a party to the contact as **herself, a sovereign flesh and blood woman.**

207 Affiant affirmed at the time this contract was signed by her she did not know, and it was not disclosed to her by the closing agents acting in behalf of the original lender, for whose actions in the contract Defendant is responsible to the Plaintiff in their enforcement of the contract against her; that the common mediums of exchange regularly obtainable in commerce by which she was expecting to pay the contract and which the symbols used referencing monetary amounts of the loan and payments to be made indicate it is expected to be paid, (that being currency of non-redeemable Federal Reserve Notes or other legal tender in lieu of money of substance of gold and silver or negotiable instruments drawn on the same), require the contract to be construed under the rule of admiralty maritime and the Law Merchant over created vessels of legal fiction and non-redeemable currency and negotiable instruments payable in such rather than under the civil common law over contracts between **real flesh and blood natural persons and real commercial entities and lawful money of substance.** And Affiant further affirms these facts of the contract were not disclosed to her, again, **denying or directly limiting and affecting, without her knowledge or consent, the constitutional and unalienable rights of the Plaintiff in the contract under that civil common law over the land, on Maryland, the state of the Republic, and the protection of her rights, standing and ability to make defenses against the contact should he have need to do so.**

208 Affiant has affirmed at the time this contract was signed by her she did not know and it was not disclosed to her by the closing agents acting in behalf of the original lender, for whose actions in the contract Defendant is responsible to the Plaintiff in their enforcement of the contract against her; that the contract, its parties and the property that is the subject of it, by the terms, stylings, spellings, abbreviations, symbols and/or delineations used to locate and/or legally identify these entities was to be construed as between **artificial corporate persons, juristic entities and/or vessels of legal fiction** and **pertaining to artificial juristic**

properties of legal fiction for commerce under the International Law, Merchant and military or maritime law within commercial, military, maritime or administrative, federal corporate districts and jurisdictions that are something other than a jurisdiction in and on Maryland, the state of the Republic,. and that the subject property was being identified by the contract as other than property of real earth and soil on the land, on Maryland , the state of the Republic that was **not** to be construed as governed within the jurisdiction of the civil common law over the land, on Maryland , the state of the Republic, United States of America. Again, denying to the Affiant **without her knowledge or consent** her constitutional and unalienable rights under that civil common law over the land, on Maryland , the state of the Republic, **and the protection of his rights, standing and ability to make defenses against the contract under it.**

209 Nor Affiant affirms was it disclosed to her that by her signing such, she herself, the flesh and blood woman, and/or the legal borrower and maker of the contract was to be construed as something other than **a sovereign born state Citizen domiciled <u>on</u> the land, on** Maryland , a state of the Constitutional republic, United States of America, or subject to any other jurisdictions than Maryland the state of the Republic. Again, denying to the Affiant **without her knowledge or consent** his constitutional and unalienable rights under that civil common law over the land, on  Maryland , the state of the Republic, and over its citizens thereon **and the protection of his rights, standing and ability to make defenses against the contract under it.**

210 Nor Affiant affirms was she made aware that the protections of his constitutional and unalienable rights under these civil common law jurisdictions that adhere to her as a sovereign born state citizen domiciled on the land under these constitutions was **not** to be afforded the Affiant, Joellyn Andrews, the flesh and blood woman, and/or the legal borrower and maker of the contract under it.

211 Affiant has averred and affirmed she has not been provided, and is not in knowledge of or in possession of any proof or claim by sworn affidavit of first hand knowledge or other competent fact witness rebutting or disputing any factual averments of the affiant therein made, and is of best belief that none exist. And Affiant **disputes and denies** any claims to the contrary of those she has made and **demands strict proof** of any and all parties by competent fact witness in rebuttal of his **first hand sworn affirmation, (affidavit FI WMF).**

212 Plaintiff did not discover the breaches of contract by these misrepresentations and failures of disclosure of these material facts until March 2009. Yet the contract was breached from the beginning by Defendant or its predecessor for whom Defendant is responsible for the contract, pursuant to **MD Code 1-103** by these causes which supplement the provisions of a contract under  Maryland law.

**MD Code 1-103,**
"Unless specifically waived by the parties to an agreement, the principles of law and equity: including the law merchant and the law relative to capacity to contract, principle and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement the provisions of a contract.

Which principles of law and equity Affiant has affirmed were not waived by the Plaintiff in the making of this contract.

And pursuant to: **MD Code  3-305. DEFENSES AND CLAIMS IN RECOUPMENT.**

Except as stated in subsection (b), **the right to enforce the obligation of a party to pay an instrument is subject to the following:**
**b)**                                                 (1) a defense of the obligor based on …. **(ii) duress, lack of legal capacity,** or illegality of the transaction which, under other law, <u>nullifies the obligation of the obligor,</u> (iii) fraud that induced the obligor to sign the **instrument** with **neither** knowledge nor reasonable opportunity to learn of its character or its essential terms,

b) The right of a <u>holder in due course</u> to enforce the obligation of a <u>party</u> to pay the <u>instrument</u> is <u>subject to defenses of the obligor</u> stated in subsection (a)(1),

213 Wherefore, premises considered, It is seen by the first hand eyewitness testimony of the Plaintiff, as cited above from exhibit FIWMF, that the original lender, for whose actions Defendant is responsible to the Plaintiff, has withheld and failed to disclose material fact of this contract to Joellyn Andrews as to:

1) **the actual legal parties to the agreement** who, without her knowledge or agreement were therein to be construed as **artificial corporate persons, juristic entities and/or vessels of legal fiction** subject to **other jurisdictions** than those of the civil common law on the land on Maryland, the state of the republic and **not** affording the Affiant the constitutional and unalienable rights that adhere to real persons there under;

2) that her name spelled in ALL CAPITAL letters in the contract represented another artificial corporate person, juristic entity or vessel of legal fiction of the state's creation **not herself, who was to be the actual legal borrower under the contract,** and the Affiant himself only to be construed as acting as **fiduciary agent for such non-real artificial juristic entity of her name,** denying to the Affiant **without his knowledge or consent,** his full rights as a party to the contact as **herself, a sovereign flesh and blood woman.**

It is further seen Plaintiff was not informed of and was denied disclosure of:

3) **the actual nature of the subject property being identified by the contract** as being other than property of real earth and soil on the land, on Maryland, the state of the Republic that was **not** to be construed as governed within the jurisdiction of the civil common law over the land, on Maryland, the state of the Republic, United States of America, and that **did not** afford to the Affiant the rights and protections of property within such jurisdictions of the civil common law over the land, on Maryland, the state of the Republic,;

4) and was further denied disclosure **of the jurisdictions of law under which the parties and property were construed therein to be subject, and the law under which the contract was to be**

construed and governed, as i . ...g other than those of the civil comm.  law over the land, on Maryland , the state of the Republic, United States of America, **denying or directly limiting and affecting, without his knowledge or consent, the constitutional and unalienable rights of the Plaintiff in the contract under that civil common law over the land, on** Maryland **, the state of the Republic, and the protection of his rights, standing and ability to make defenses against the contract under it should he have need to do so.**

214 Defendant's failure to make these material disclosures was false, misleading, or made recklessly, without care of the true facts with callous disregard for the rights of the Plaintiff.

215 As a proximate result of these withholdings of material fact and failures of disclosure and Plaintiff's justifiable reliance upon the same, the contract has been breached by the Defendant and the Plaintiff has been damaged by denying her the right to full disclosure of these material facts of the contract by which she would have known of these unconscionable inequities and would have had the cause, incentive and opportunity to have sought to negotiate greater **protections of her rights, standing and ability to make defenses against enforcement of the contract should he ever have had need to do so** or to reject the contract as written altogether. **Thereby nullifying and voiding the contract from the beginning according to the law cited herein and as there can be no legal default by Plaintiff under a contract that has been breached and voided by the actions of the Defendant or its predecessor from the beginning, Defendant** is estopped from its enforcement of such an invalid and breached contract. Any funds owed by the Plaintiff are not recoverable against him under a void contract and any loss or consequences for the money are damages to the bank for its actions.

**Defendant moves the Court that it be so ordered.**

XII.

COUNT NINE

VOID AND UNLAWFUL LIEN

216 Any Liens filed must comply with the Uniform Commercial Code of this state. Within Article 9 there are criteria that have to be met when filing a Notice of Lien and/or Levy or Lien. If the criteria are not met, there is a violation of the Statute. Further, filing false and fraudulent documents violates **Title 18 USC 1001.**

217 Among the required criteria are:

1) There must be a **valid UCC~I** Form filed, upon which is shown **the alleged debtors signature** and the creditor's signature. Without these two signatures on the instrument, there is an invalid Lien filed.

2) There must be a **financing statement/security agreement signed by the alleged Plaintiff** and the secured party. This financing statement is also mentioned in **9-403** of the **MD CODE.**

218 **Without this, any Lien may be invalid and without force and effect.**

219 Lack of any one of the above is sufficient cause for the recording officer to immediately reject any attempt to file a Lien by any bank agent.

220 The officer recording any Lien, must require this of the filing party, regardless whether it is private man, private corporation or any state or federal government agency, as it is mandatory under the **MD CODE** herein cited and the UCC as adopted by Congress in 1963, P.L. 88-243.

221 As affirmed by Plaintiffs in Affidavit UL, herein attached, I have never been a party to the signing of any such UCC –1 Form nor any financial statement/security agreement and there disavows knowledge of any such instruments. And further affirms upon diligent search of the public records, we find no recording of any such UCC –1 Form nor any financial statement or security agreement pertaining to the purchase [refinance] of the property that is subject of this dispute

222 Premises considered, **pursuant to these requirements of the** MD COMMERCIAL CODE **the Deed of Trust lien that is the subject of this dispute is unlawful and is voided by the failures of the Defendant from the beginning.** Defendant is estopped from its enforcement of such an invalid and void security interest and Defendant ordered to pay damages to the Plaintiff for its breaches of contract in amount of $418,980.

**Plaintiff moves the Court that it be so ordered**

RESPECTFULLY SUBMITTED,

Joellyn Andrews

In Propria Persona